JOHN T. PORTER, Respondent, v. MUNICIPAL GAS COMPANY OF THE CITY OF ALBANY, Appellant.

Negligence — electric wires — alleged negligence of electric light company in so maintaining wires as to prevent firemen from raising ladder to enable plaintiff to escape from burning building — alleged failure of defendant to comply with municipal ordinance requiring wires to be placed under ground — defendant not chargeable with such failure when municipal authorities declined to instruct defendant where to bury the wires — permission to appeal — effect of on unanimous affirmance.

1. This action was brought by plaintiff to recover damages for injuries claimed to have been sustained by him in jumping from the upper story of a building during a conflagration which attacked the lower portion, cutting off the usual means of egress. Under these circumstances he sought escape by means of a fire ladder, but the firemen were prevented from raising the ladder to him by some of defendant's wires which had been strung in front of and close to the building. Having been cut off from escape in this manner he was compelled to jump to the ground and thus received his injuries, attributing them to defendant's misconduct. Theretofore, the common council of the city had passed an ordinance, which was within its powers, requiring such wires as defendant's in this locality · to be placed in underground conduits and providing that plans therefor " shall be submitted to and approved by the Commissioner of Public Works * * * before the work is undertaken." With this ordinance the defendant had failed to comply, but, before the accident, had applied to the commissioner of public works for instructions as to the location of conduits to be placed by it in the territory wherein naturally would have been placed the wires in question. The commissioner was then unable to approve their

location because of certain municipal improvements then contemplated in that locality and testified on the trial that definite plans for the improvements had not been decided upon at the time of the accident. The defendant was thus prevented from complying with the ordinance by the inability and refusal of the city's official to give it such instructions and approval as were by the ordinance made a condition precedent. While it was argued that the defendant might have located its conduits on the opposite side of the street and outside of the territory for which the commissioner failed to give plans, the cause was not tried on that theory and it would be unfair to adopt it on this appeal. Hence, the trial judge erred in refusing to charge that the failure on the part of the commissioner amounted to a complete excuse for defendant's omission to comply with the ordinance. (*McRickard* v. *Flint*, 114 N. Y. 222, and *Arnold* v. *Nat. Starch Co.* 194 N. Y. 42, distinguished.)

2. Permission to appeal does not permit this court in any degree to avoid the effect of a unanimous affirmance by the Appellate Division.

*Porter* v. *Municipal Gas Co.*, 169 App. Div. 750, reversed.

(Argued February 1, 1917; decided February 27, 1917.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered November 13, 1915, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Neile F. Towner* for appellant. The ordinance requiring defendant to remove its wires and poles and place its wires under ground in this locality was in violation of the Constitution of the United States and the Constitution of the state of New York. (*Trustees of Dartmouth College* v. *Woodward*, 4 Wheat. 518; *People* v. *O'Brien*, 111 N. Y. 1; *Matter of N. Y. Electric Lines*, 201 N. Y. 331; *Mayor* v. *Second Avenue R. Co.*, 32 N. Y. 261; *Western Union Tel. Co.* v. *City of Syracuse*, 24 Misc. Rep. 338; *N. S. E. L. & P. Co.* v. *P. J. E. L. Co.*, 151 App. Div. 64; *Ghee* v. *N. U. Gas Co.*, 158 N. Y. 510; *A. R. Tel. Co.* v. *Hess*, 125 N. Y. 641; *People ex rel.*

*N. Y. E. Co.* v. *Ellison,* 188 N. Y. 523; *Matter of N. Y. C. A. Gas Co.,* 201 N. Y. 331.) The ordinance compelling wires to be placed under ground was in effect suspended by the commissioner of public works as far as defendant's wires and poles in this immediate vicinity were concerned. The commissioner had full authority over the street. (L. 1909, ch. 55, § 91.)

*J. A. Kellogg, Lyman Jenkins* and *John H. Barker* for respondent. The ordinance requiring the defendant to remove its wires and poles from the streets of the city of Albany and place the same under ground was neither in violation of the Constitution of the United States nor of the Constitution of the state of New York, but was a valid exercise of police power. (*People ex rel. N. Y. Elec. Lines Co.* v. *Squire,* 107 N. Y. 593; 145 U. S. 175; *American Rapid Tel. Co.* v. *Hess,* 125 N. Y. 641; *People ex rel. N. Y. Elec. Lines Co.* v. *Ellison,* 188 N. Y. 523; 214 U. S. 529; *Fifth Ave. Coach Co.* v. *City of New York,* 194 N. Y. 19; *Barhite* v. *Home Tel. Co.,* 50 App. Div. 25; *People ex rel. City of Olean* v. *W. N. Y. & P. Traction Co.,* 214 N. Y. 526; *City of Rochester* v. *MacAuley-Finn Milling Co.,* 199 N. Y. 207.) The commissioner of public works did not suspend the operation of the ordinance nor did he have any power to suspend its operation. (*People ex rel. Cooke* v. *Stewart,* 77 App. Div. 181; *People ex rel. Van Beuren* v. *Miller,* 161 App. Div. 138; *Griffin* v. *City of Gloversville,* 67 App. Div. 403; *City of New York* v. *Trustees,* 85 App. Div. 355; 180 N. Y. 527; *Village of Carthage* v. *Frederick,* 122 N. Y. 268; *City of Buffalo* v. *N. Y., L. E. & W. R. R. Co.,* 152 N. Y. 276; *Johnson* v. *City of New York,* 186 N. Y. 139; *Landau* v. *City of New York,* 180 N. Y. 48.)

HISCOCK, Ch. J. This action was brought by plaintiff to recover damages for injuries claimed to have been sustained by him in jumping from the upper story of a

building, situate at the southeast corner of State street and Broadway in the city of Albany, the location being a matter of importance. While allegations of negligence and of the maintenance of a nuisance upon the part of and by the defendant are commingled in the complaint, the action was submitted to the jury solely as one of negligence.

The important facts which gave rise to the accident to the plaintiff were as follows: While he was in the upper story of the building a conflagration attacked the lower portion, cutting off the usual means of egress. Under these circumstances he sought escape by means of a fire ladder, but as claimed and has been found by the jury, the firemen were prevented from raising this ladder to him by some of defendant's wires which had been strung negligently and improperly in front of and close to the building. Having been cut off from escape in this manner he was compelled to jump to the ground and thus received his injuries, attributing them to defendant's misconduct.

While the trial judge held that there was other evidence of negligence upon the part of the defendant in stringing its wires as it did, unquestionably the most influential line of evidence upon this point consisted of proof that some time before the accident the common council of the city of Albany had passed an ordinance requiring such wires as defendant's in this locality to be placed in underground conduits and that the latter had failed to obey this ordinance, and all of the assignments of error argued and open to our consideration, in view of the unanimous affirmance, spring from this line of evidence. We think that all of these claims of error are without foundation, with one exception, but that this one is of sufficient importance and is sufficiently well founded to require a new trial.

The ordinance in question required all wires within a prescribed district, with certain exceptions, to be placed

under ground within two years. The prescribed territory included the point of location of the wires which have been complained of. It is a little argued that the wires in question were what were described in the ordinance as "distributing wires" and were excepted from its application, but we do not think that upon the evidence as now presented this was the case and that, therefore, defendant was relieved from obedience to · the ordinance upon that ground.

Passing by this minor question the ordinance is vigorously assailed as having been adopted by the council without power, as being discriminatory because it excepted from its application certain wires such as trolley wires and telephone wires and because limited to certain territory, and as being unconstitutional because attempting to impair contractual rights which defendant had acquired to string its wires on poles in the streets before the ordinance was adopted. We feel so clear that the common council had the power, under the authority conferred upon it by statute and under the conditions incorporated in defendant's contract with the city, to pass an ordinance of this kind in the exercise of the police power, and that the limitations of territory and exception of certain wires specified in the ordinance were so within the proper discretion of the common council as not to invalidate the enactment, that we shall not consider these questions at length.

A complication, however, arose in connection with the non-compliance by defendant with the ordinance which in our opinion was not properly treated by the trial court in its charge, with the result that defendant was substantially prejudiced before the jury.

The ordinance amongst other things provided:

"The plans for such conduits (those in which the wires were required to be laid underground) shall be submitted to and approved by the Commissioner of Public Works of the city of Albany before the work is under-

taken, * * *. All work done in the laying of such conduits, ducts, mains, wires, pipes, cables or other conductors, and distributing poles, * * * shall be done under the direction of the Commissioner of Public Works, and the location of said conduits, mains or pipes, and distributing poles in the several streets, * * *, shall be determined by said Commissioner of Public Works."

In due season and a considerable time before the accident to plaintiff, defendant applied to the commissioner of public works for instructions as to the location of conduits to be placed by it in the territory east of Broadway and south of State street, wherein naturally would have been placed the wires in question. Said commissioner according to his own testimony told defendant's representative "that it would be impossible for him (me) to approve of the location of any conduits in that section at that time, and that the matter would have to be deferred until some time when definite plans had been decided upon for the improvement of that section," and said commissioner further testified that definite plans for such improvements had not been decided upon at the time of the accident. It was also testified, without contradiction, that the commissioner advised defendant's representative that he did not know at the time of said conversation " where he could give us permission to put conduits as they had no plans made and that he would advise us later," and also in substance that the defendant was ready at that time to proceed with the work of placing its wires in conduits in the section in question if it had received the necessary directions. It seems to us that this inability and failure of the commissioner to give defendant the necessary instructions concerning the location of its conduits under the circumstances operated as an excuse for its failure to comply with the ordinance. Undoubtedly, as was held by the trial court, the commissioner of public works did not have the power to annul the ordinance by generally

and indefinitely relieving the defendant from obedience thereto. That would have been entirely beyond his authority. Nevertheless, the common council at the very time when it required defendant to place wires underground, positively and expressly provided that the location thereof should be subject to the instructions and approval of one of its own officers. Defendant had no right to proceed in obedience to the commands of the ordinance without such precedent directions and authority, and, when seeking to obtain these it was temporarily denied them upon what seems to have been a perfectly honest. and sufficient reason, we think it was clearly entitled to abide by the action of the official and delay proceedings. There is here no suggestion of bad faith or collusion upon the part of either the defendant or the commissioner, nor any question that contemplated improvements in the territory in question did furnish a sufficient reason for delay by the commissioner in locating the conduits. It seems to us that the suggestions which have been made that the defendant by legal proceedings might have compelled the commissioner to give it a plan, or might have temporarily constructed conduits to be torn out or changed later, are not deserving of serious consideration. The municipality selected one of its own officers as the person to whom defendant should go for plans and approval, and it seems rather farfetched to argue that the burden rested upon the defendant of compelling by legal proceedings an official, who had been selected by the city, to discharge the duties which the municipality had intrusted to him.

We do not lose sight of the arguments which are made that defendant might have located its conduits on the westerly side of Broadway and outside of the territory for which the commissioner announced himself as unable to give plans. We do not think, however, that the case was tried on any theory other than the one that defendant's wires under the ordinance in question should have

been placed in conduits located in the territory which has been discussed and it would be unfair to defendant upon this appeal to adopt some other theory.

In these features this case is clearly distinguishable from and not at all to be confused with cases holding that a person required to adopt safety appliances on his own premises to be approved by a public official, is not justified in waiting for the initiative of such official, but is under obligations to seek him and secure the proper approval, and of which cases *McRickard* v. *Flint* (114 N. Y. 222) and *Arnold* v. *Nat. Starch Co.* (194 N. Y. 42) are illustrations. In those cases there were entirely lacking the features here present that the party accused of negligence was required to make improvements in a public place rather than upon his own premises and that on seeking directions from the designated public official, which were made a condition precedent, he was temporarily refused such necessary instructions because of a perfectly adequate reason.

Reaching the conclusion, therefore, that the defendant was prevented from complying with the ordinance by the refusal of the city's official to give it such instructions and approval as were made a prerequisite to compliance, we pass to a consideration of the treatment which was given to this subject by the trial judge.

In his main charge he instructed the jury: "I charge you also that the commissioner of public works had no authority to suspend the operation of this ordinance under the law. But you must take into account whether or not his refusal to give his assent to the plans for these underground conduits, submitted to him by the defendant, did not excuse what otherwise might be negligence, or would be regarded as negligence of the defendant. You must take that fact into account together with all the other proof in this case in determining the question of the defendant's negligence, or want of negligence." These instructions were not excepted to and, therefore, it

is unnecessary to determine whether they were precisely accurate. Later, however, defendant's counsel asked the court to charge in addition to what had already been stated: "While the commissioner of public works could not suspend the operation of the ordinance, * * * if the jury find that the commissioner of public works refused to give the defendant assent to build the underground conduits in that section, in which to place the underground wires, that that fact would excuse the defendant in not obeying said ordinance."

The court replied: "No, I decline to charge that, but I say the jury must take that fact into account in determining whether the defendant was negligent." This refusal was excepted to and we think that thereby is presented the error which requires a reversal of the judgment.

If our reasoning has been correct, the refusal of the commissioner of public works down to the time of the accident to give defendant instructions for the location of its conduits, which were absolutely required by the ordinance commanding it to lay the same, was an excuse for failure to obey the ordinance, and the defendant was entitled to have the jury plainly and explicitly thus instructed. Such instruction in effect would have withdrawn from the consideration of the jury the failure of the defendant to comply with said ordinance, and which failure, as we have already stated, was undoubtedly a most potential fact with the jury in passing upon the conduct of the defendant. Instead of thus instructing the jury, the latter were told that they must take that fact — the failure and refusal of the commissioner to give necessary instructions — "into account" in determining whether the defendant was negligent. In view of the refusal of the trial court to charge that such failure of the commissioner amounted to a complete excuse for defendant's omission to comply with the ordinance, the jury must necessarily have understood that the instruc-

tions that they were to take such failure " into account " meant that they might consider it and give to it greater or less or no weight as they chose, and nobody can tell which measure of consideration was applied.   This was not enough.   In our opinion there was no uncertainty concerning the effect upon defendant's conduct of the commissioner's failure to act.   It was a complete excuse and it should not have been subjected to the uncertainties of a weighing process by which the jury were permitted entirely to disregard it if they felt so disposed.   This was substantial error which very well may have affected the result.

We deem it proper to say that many propositions have been argued by one side or the other upon this appeal. which are withdrawn from our consideration by the unanimous affirmance and which we do not pass upon in any manner, and amongst which may be mentioned the ones upon the part of the defendant that the evidence did not establish its negligence or that its wires were the proximate cause of plaintiff's accident, and upon the part of the plaintiff that there was other evidence than that of defendant's failure to comply with the ordinance which entitled him to go to the jury.   These questions are conclusively settled upon the present appeal, the fact that permission to appeal was granted not permitting us in any degree to avoid the effect upon them of the unanimous affirmance by the Appellate Division of the judgment of the Trial Term.

The judgment appealed from should be reversed and a new trial granted, with costs to abide the event.

COLLIN, HOGAN, POUND and McLAUGHLIN, JJ., concur; CARDOZO and CRANE, JJ., dissent.

Judgment reversed, etc.