PHELPS-STOKES ESTATES, INCORPORATED, Appellant, *v.*
LEWIS NIXON, Respondent.

**Stocks — tax — agreement that defendant, upon a certain
contingency, would purchase certain stock from plaintiff —
upon defendant's failure to comply plaintiff's action is for
damages for purchase price of stock — when plaintiff's failure
to pay transfer tax on stock not a defense to the action.**

1. Where defendant entered into an agreement with plaintiff that,
if a third party did not fulfill a certain obligation with plaintiff before
a designated date, for the fulfillment of which obligation plaintiff
held certain stock as collateral, the defendant would purchase the
stock and pay the obligation, and the defendant refused and refuses to
take the stock and pay for it although plaintiff has been and is able and
willing to deliver it, and the plaintiff brings his action for the balance
of the moneys agreed to be paid for the stock, the action is not one to
recover damages for breach of contract but one to recover damages
for the purchase price of the stock, and is based upon the theory that
because of its election the title to this stock is vested in the vendee,
and that it passed from the vendor to him.

2. Sections 270, 272 and 278 of the Tax Law (Cons. Laws, ch. 60)
contemplate something more than a theoretical change of title. They
contemplate some physical act; the delivery of a certificate; the
execution and delivery of a bill of sale; an entry upon the books of the
corporation. Where, as in this case, there is an executory agreement
for the purchase and sale of stock upon a contingency and the agree-
ment was not carried out and there was no actual delivery, no physical
transfer of the stock from the plaintiff to the defendant, the transfer
consisting of an election on the part of the plaintiff that the stock
hitherto belonging to it should belong to the defendant, the change
of title is not a transfer of the stock within the meaning of section 278
of the Tax Law (Cons. Laws, ch. 60), which provides that if the tax
is not paid no such transfer "shall be made the basis of any action or
legal proceedings, nor shall proof thereof be offered or received in
evidence in any court in this state," nor is it an agreement to sell,
within the meaning of section 270 of that law, which contemplates
an absolute and unconditional agreement. Hence these facts do not
constitute a defense to plaintiff's cause of action to recover damages
for the purchase price of the stock.

*Wyllys Co.* v. *Nixon,* 165 App. Div. 373, reversed.

(Argued October 18, 1917; decided December 4, 1917.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 3, 1915, reversing a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury and granting a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*James G. Dale* and *George L. Shearer* for appellant. The complaint states a good cause of action against the defendant for the recovery of the contract price of the stock, and the case was tried on the correct theory of law. (*Burnham* v. *Eyre*, 123 App. Div. 777; *Empire State* v. *Grant*, 114 N. Y. 40; *Ackerman* v. *Rubens*, 167 N. Y. 405.) The transfer of title to the stock was not a condition precedent to the recovery of the purchase price and the judgment of the trial court was, therefore, correct. (*Ackerman* v. *Rubens*, 167 N. Y. 405; *Moore* v. *Potter*, 155 N. Y. 481; *Security T. & T. Co.* v. *Stewart*, 154 App. Div. 434; *Gray* v. *Booth*, 64 App. Div. 231; *Cambridge Society* v. *Elliott*, 50 Misc. Rep. 159; *Ideal Cash Register Co.* v. *Zunino*, 39 Misc. Rep. 311; *Hayden* v. *Demets*, 53 N. Y. 426; *Mason* v. *Decker*, 72 N. Y. 595.) The affirmative defense based on section 278 of the Tax Law has no application to this case because there has been no transfer of stock. (L. 1909, ch. 62, §§ 270, 278.)

*Stuart M. Kohn* and *Leon Kauffman* for respondent. The complaint does not state a good cause of action against the defendant for the recovery of the purchase price, and if the action is to be considered as one to recover the purchase price then the failure to pay the transfer tax would prevent plaintiff's recovery. (*Lester* v. *Jewett*, 11 N. Y. 453; *Pope* v. *T. H. C. & M. Co.*, 107 N. Y. 61; *Mills* v. *Gould*, 1 Abb. [N. C.] 93; *Chatterton* v. *Fisk*, 1 Abb. [N. C.] 88; *Hagar* v. *King*, 38 Barb. 200, 209; Abb. Brief on Pleading, § 188; *Van Brocklin* v.

*Smallie,* 140 N. Y. 70.) The failure of the plaintiff to pay the tax required by sections 270 to 278 of the Tax Law is an absolute defense and a bar to any recovery. (*Bean* v. *Flint,* 138 App. Div. 846; *Sheridan* v. *Tucker,* 145 App. Div. 145; *Hatch* v. *Reardon,* 184 N. Y. 431; *Phillips* v. *Grossman,* 76 Misc. Rep. 498.)

ANDREWS, J. The complaint in this action alleges that the defendant offered to purchase of the plaintiff certain stock deposited by a third party with the latter to secure the payment of $3,260.44. This offer was in the form of a letter. " In case Mr. Rogers does not take up this obligation before November the 27th, 1913, I hereby agree to purchase the securities, paying the amount of the above obligation with interest on or before said date."

The complaint then alleges acceptance by the plaintiff of the said offer; the failure of Rogers to take up the obligation for which the stock was held as collateral; that on November 27th and at all times since the " plaintiff has been and now is ready and willing to deliver to the defendant the aforesaid shares of stock in pursuance to the terms of its aforesaid contract; " demand upon the defendant for the payment of $3,260.44; that the plaintiff has at all times " had and now has in its possession all the aforesaid stock and at all times has been and on the 27th day of November, 1913, was ready and willing to deliver to the defendant the aforesaid shares of stock; " the refusal of the defendant to pay the moneys agreed to be paid for the delivery to him of the shares, except the sum of $441.75, " leaving a balance due and owing to the plaintiff in the sum of $2,818.69," and ends by demanding judgment for that amount.

The answer denies none of the allegations of the complaint, but as a separate and distinct defense alleges that at the time of the transaction set forth in the complaint

the plaintiff did not affix the stamps and pay the tax as provided by section 270 of the Tax Law of this state; that this tax has never been paid; that at the same time the plaintiff did not deliver to the defendant a bill or memorandum ·of sale to which stamps had been affixed, and has never delivered such memorandum.

It further alleges that the tax imposed by the Tax Law was not paid at the time of said transfer and that the transfer, therefore, cannot be the basis of any action or legal proceeding.

.Upon the trial it was stipulated that no sum has been paid in pursuance to sections 270 to 278 of the Tax Law.

No other evidence was offered and findings of fact were made based upon the complaint and upon this stipulation. Upon these findings judgment was ordered for the amount demanded in the complaint and for costs.

Upon appeal to the Appellate Division the judgment was reversed and a new trial ordered on the ground, as appears from the opinion, that while the Tax Law did not apply, yet the action had been tried upon an erroneous theory; that it was an action to recover damages for the breach of the defendant's contract to purchase, and that it was tried as if it were an action to recover the purchase price; that the damages allowed should have been the difference between the value of the stock, the title and possession of which is in the plaintiff, and the amount which the defendant agreed to pay.

In this proposition the Appellate Division was in error. The action was not to recover damages for breach of contract, but was to recover the purchase price of the stock. It seems to us clear that this was the theory of the plaintiff and that the whole frame of the complaint shows it to be so. Nor did the defendant object.

This being so, neither may the Appellate Division

adopt a new theory for the parties nor may we affirm their action on the ground that if the parties had adopted some other theory the judgment of the Trial Term would not have been sustained by the findings. Whether a tender should have been alleged and proved or whether under section 144 of the Personal Property Law (Cons. Laws, ch. 41) an action may be maintained for the price except in the case mentioned in subdivision 3 of that section becomes immaterial.

We must, therefore, consider the serious question upon which the defendant relied in the courts below.

At least until 1911, where an executory contract of sale was made and where the vendee refused to complete, there were in this state various remedies open to the vendor. 1. He might acquiesce in the breach and sue for the damages caused him thereby. If such was his course he retained possession of and title to the property sold and recovered damages measured by the difference between the market value of the article and the contract price. 2. He might sell the property for the highest price he could obtain therefor and after crediting the net amount received to the vendee, sue for the balance of the purchase money, or 3. He might elect to consider that the title had passed to the vendee. In this case he held the property as agent for the vendee; in theory it belonged to the latter and the vendor might recover the whole amount of the purchase price.

There were two exceptions to this rule that only when the title passed at the election of the vendor might he sue for the purchase price. The parties might agree that the purchase price should be due before title passed. But such an agreement must appear in the contract. Or the vendee by his actions might have prevented the transfer of title.

The mere refusal by the vendee, however, to accept the property was not such an act as to prevent the transfer

of title to him within this exception. There had to be some affirmative act on his part beyond the mere refusal to complete his contract.

Assuming, therefore, as we must, that the action before us is brought by the vendor against the vendee to recover the purchase price, it is based upon the theory that because of its election the title to this stock is vested in the vendee, and that it passed from the vendor to him.

Concededly in the case at bar there is an executory agreement for the purchase and sale of stock. Concededly this agreement was not in fact carried out by the parties thereto. Concededly there was no actual delivery — no physical transfer of the stock from the plaintiff to the defendant. What there was consisted of an election on the part of the plaintiff that the stock hitherto belonging to it should belong to the defendant. And the assumption of the appellant is that the change of title so effected is a transfer of the stock under section 278 of the Tax Law. (Cons. Laws, ch. 60.)

The agreement was to take effect upon the happening of a contingency within the control of neither of the parties to the agreement. We are inclined to think that such a contract is not an agreement to sell within the meaning of section 270 of the Tax Law; that that section contemplates an absolute and unconditional agreement.

This question is, however, not material for it involves simply the suggestion that the vendor may have committed a misdemeanor or may have subjected itself to a penalty. As between the vendor and the vendee the agreement is perfectly valid. (*Bean* v. *Flint*, 204 N. Y. 153, 158; *Matter of Wylly*, 210 Fed. Rep. 954.)

A different rule applies, however, to a transfer of stock. If the tax is not paid no such transfer " shall be made the basis of any action or legal proceedings, nor shall proof thereof be offered or received in evidence in any court in this state." (Tax Law, § 278.)

If, therefore, the vesting of title in the vendee merely by the election of the vendor is a transfer within the meaning of this section of the Tax Law, then the plaintiff may not recover.

Such is not the meaning of the act. The tax is on all " sales, or agreements to sell, or memoranda of sales, or deliveries, or transfers, of shares or certificates of stock, * * * whether made upon or shown by the books of the association, company or corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale whether entitling the holder in any manner to the benefit of such stock, or to secure the future payment of money or the future transfer of any stock, * * *. The payment of such tax shall be denoted by an adhesive stamp or stamps affixed as follows: In a case where the evidence of transfer is shown only by the books of the company the stamp shall be placed upon such books; and where the change of ownership is by transfer of a certificate the stamp shall be placed upon the certificate; and in cases of an agreement to sell or where the transfer is by delivery of the certificate assigned in blank there shall be made and delivered by the seller to the buyer a bill or memorandum of such sale to which the stamp provided for by this article shall be affixed." (§ 270.)

Section 272 provides that any person or persons " who shall make any sale or transfer without paying the tax by this article imposed or who shall in pursuance of any sale or agreement deliver any stock, or evidence of the sale of or agreement to sell any stock or bill or memorandum thereof, without having the stamps provided for in this article affixed thereto, shall be deemed guilty of a misdemeanor."

These sections contemplate something more than a theoretical change of title. They contemplate some

physical act; the delivery of a certificate; the execution and delivery of a bill of sale; an entry upon the books of the corporation. It is such a transfer as is referred to in section 162 of the Personal Property Law.

A transfer is defined in the Century Dictionary as " The conveyance of right, title or property, either real or personal, from one person to another, either by sale, by gift or otherwise."

In Bouvier it is said that a transfer is " The act by which the owner of a thing delivered it to another person with the intent of passing the rights which he has in the latter."

In *Hendrick* v. *Daniel* (119 Ga. 358–361) a transfer " Covers any act by which the owner of anything delivers or conveys it to another with intent to pass his rights therein."

In *Pearre* v. *Hawkins* (62 Tex. 434) a transfer is said to be " An act or transaction by which the property of one person is by him vested in another."

In *People ex rel. Hatch* v. *Reardon* (184 N. Y. 431) the constitutionality of the Stock Transfer Act was in question. There is no definition given as to the meaning of the word " transfer." But the language of Judge VANN's opinion seems to involve the idea that a transfer within the meaning of the statute necessitates some act, such as a sale on the part of the transferor.

In *People* v. *Duffy-McInnerney Company* (122 App. Div. 336, 337) the question arose whether the issue by a corporation of its original shares was a transfer. The Appellate Division of the third department said that the statute was to be strictly construed, and that a sale or transfer cannot, except by forced interpretation, be held to include an original issue of certificates. " Until those certificates are once issued they cannot be made the subject of such sale or transfer as to bring them within the provisions of the act requiring them to pay the tax."

In the opinions of the attorney-general for September 30, 1914, it was said that where, when trustees named in a will and who as such hold title to stock, either die or resign and a successor is appointed in accordance with the provisions of the will, the title to the trust property including the stock, passes to and vests in the substituted trustees; and that such a passing of title is not a transfer within the meaning of the act.

" The title to the stock immediately vests in the substituted trustees, not by virtue of any sale or transfer within the ordinarily accepted meaning of these terms, but by operation of law."

The word " transfer " has been used in other sections of this law. Article 10 relates to what was known as " taxable transfers " in cases of death. Section 243 defines the word " transfer " to include " the passing of property or any interest therein in possession or enjoyment, present or future, by inheritance, descent, devise, bequest, grant, deed, bargain, sale or gift, in the manner herein prescribed."

In *Matter of Gould* (156 N. Y. 423–428) it is said that the word " transfer " in the statute is used " according to its ordinary legal signification, which is that the owner of a thing delivers it to another person with the intent of passing the rights which he has in it to the latter."

This definition is not made applicable to transfers of stock provided for in article 12, but it has some bearing upon what was in the mind of the legislature when it used the word " transfer."

The theory that such an action as the present is based upon the transfer of title is a legal fiction. If the plaintiff succeeds in the recovery of the price of the stock, then when the judgment is paid he does hold it in trust for the defendant. The defendant has a right to demand the stock and undoubtedly the plaintiff must deliver it to him with the proper stamps attached. But suppose

the plaintiff fails in his action, is there any change of title to the stock? Could the defendant have replevined it on the theory that the title had passed and that the plaintiff was retaining his property? We should be slow to hold that by virtue of his election to sue for the price without affixing a stamp to the certificates, the plaintiff committed a misdemeanor.

Nor can we see that the efficiency of the Tax Law will be impaired by such a holding as is here made. It is merely that the word " transfer " as used in section 278 was not intended to prevent an action for the recovery of the purchase price of stock where an executory contract such as that in the present case was broken by the vendee.

This interpretation of the act fully accomplishes its purpose.

The judgment of the Appellate Division must be reversed and that of the trial court affirmed, with costs in the Appellate Division and in this court.

COLLIN and CUDDEBACK, JJ., concur; POUND, J., concurs specially in memorandum, in which CRANE, J., concurs; HISCOCK, Ch. J., and CARDOZO, J., dissent.

POUND, J. The judgment of the Appellate Division should be reversed and that of the trial court affirmed for these reasons:

1. This is an action for the purchase price of the stock.

2. Title remains in the plaintiff on the findings and the law of the case below to which the parties have made no objection and we should not.

3. There will be no transfer of stock until the judgment is paid when the tax must be paid. (*Waddle* v. *Cabana,* 220 N. Y. 18–27.)