ELIZABETH B. GARDNER, an Infant, by CHARLES H. GARD-
NER, Her Guardian ad Litem, Respondent, v. STATE OF
NEW YORK, Appellant.

(Claim No. 24499.)

CHARLES H. GARDNER, Respondent, v. STATE OF NEW
YORK, Appellant.

(Claim No. 24500.)

Argued June 1, 1939; decided July 11, 1939.

*John J. Bennett, Jr.,* Attorney-General (*Leon M. Layden* and *James H. Glavin, Jr.,* of counsel), for appellant.

*Charles H. Gardner* and *J. T. Gardner* for respondents.

*Per Curiam.* The Appellate Division found that failure to instruct the infant claimant pursuant to the customary method was the proximate cause of her injuries. We think this finding is in accord with the weight of the evidence. The question whether the head stand exercise was inherently dangerous to young children, even when properly instructed, is not presented by the record.

In each action the judgment should be affirmed, with costs.

RIPPEY, J. (dissenting). The questions presented for review in these appeals are whether the findings made by the Appellate Division are supported by the weight of the evidence and whether the alleged negligence of State employees was the proximate cause of the accident.

The only claim of negligence on the part of the faculty of Cortland State Normal School is that Elizabeth Gardner, an eleven-year old pupil of the seventh grade in that school, was not given the proper preliminary and strengthening exercises before she was directed in a class in physical training to stand on her head and that a competent teacher was not provided to supervise the performance of that feat.

Another theory of the case is urged here for the affirmance of the decision of the Appellate Division. That is that the stunt of standing on one's head is inherently dangerous, especially for an eleven-year old girl. But neither the Appellate Division nor the Court of Claims made any finding to that effect. This theory was not urged in the Court of Claims, but the opinion of the Appellate Division indicates that the alleged dangerous character of the stunt may have been the main basis of its decision. It is well settled that one cannot try his case on one theory in the trial court, and

be heard on another theory on appeal after his defeat (*Racine v. Morris*, 201 N. Y. 240; *Porter v. Municipal Gas Co.*, 220 N. Y. 152) and that the Appellate Division cannot adopt a new theory of an action for the parties (*Phelps-Stokes Estates, Inc. v. Nixon*, 222 N. Y. 93). No evidence was taken concerning the inherent danger in performing this stunt and no finding was requested concerning this alleged fact. An affirmance here may not be based on a holding that a " head stand " is inherently dangerous.

At the trial the claimants introduced in evidence a syllabus adopted by the Board of Regents as the standard method of teaching physical training in elementary schools throughout the State. This syllabus described in detail the various acrobatic stunts to be performed by children beginning with the first grade and continuing throughout the remaining elementary grades. Beginning in the fourth grade, according to the syllabus, after they had been instructed in less difficult feats, pupils were to perform the head stand which is described in this manual as follows: " From a squat stand place both hands on the mat shoulder width apart, fingers spread pointing sideward. Lean forward placing the forehead on the mat midway between the hands about 12 to 15 inches in advance of them. The hands and head should from a triangular base. Raise the bent legs slowly from the floor so that the head, body and legs form a continuous straight line." Claimants also produced an expert in physical training who testified that the standard teaching method and practice was to give children exercises which would strengthen their arms and teach them to balance themselves in the inverted position before they were required to do the head stand. There is not a scintilla of evidence in the record to show that the infant claimant was not given such strengthening and balancing exercises before she was required to perform the head stand. In fact, Elizabeth Gardner herself testified that during her courses in physical training in the fifth and sixth grades and up to the time of her accident in January in the seventh grade she had been instructed in the head stand and other

similar stunts. Much is made of the fact that these strengthening and balancing exercises, according to the syllabus, were to begin and be continued during the first, second and third grades, and that, in her case, they occurred only during the fifth, sixth and part of the seventh grade. The distinction is absurd. Clearly a child in his ninth, tenth and eleventh years is more fitted for and adept at stunts by reason of his greater mental and physical development and muscular coordination than a child in his sixth, seventh and eighth years, and the fact that the preliminary training was a few months shorter when given in the fifth, sixth and seventh grades, than it would have been if given throughout the first, second and third grades, certainly can have no bearing on this unfortunate accident or spell out negligence on the part of the faculty of this normal school.

The other claim of negligence is that the faculty of Cortland State Normal School failed to provide a competent and qualified teacher to supervise the instruction in stunts of the infant claimant. Paragraph C, page 10, of the syllabus provides as follows:

" Qualifications of teachers. The requirements for teaching physical education shall consist of the completion of a four-year approved high school course followed by three years of academic and professional training as approved by the Commissioner of Education."

The injury resulting to the infant claimant by reason of the performance of the head stand occurred in a regular class in physical training under the general supervision of an admittedly competent and qualified teacher. The class was divided into squads of from six to ten pupils under the immediate direction of normal students who were practice-teaching. The young lady in charge of the infant claimant's group of nine or ten children in her grade was in her third year of the four-year normal school course, and her pupils were in the foyer or lobby of the gymnasium. Other groups were inside the gymnasium proper which was separated from the foyer by two double doors. The State's

evidence shows uncontradictedly that the faculty member in charge of the partice-teachers was inside the gymnasium, engaged in going from group to group to supervise their instruction and that he had been in and out of the foyer frequently during the day, although he was temporarily absent at the time when Elizabeth Gardner was being instructed. Negligence cannot be imputed to him because he was not at a particular spot at every instant of time (*Curcio* v. *City of New York*, 275 N. Y. 20). It has been found by the Court of Claims and affirmed by the Appellate Division (Finding No. 8, Court of Claims) that: " In said syllabus descriptive of head stand for pupils it was stated: ' classes may be divided into squads under pupil leadership.' " Thus, the standard of care as attempted to be set up by the Board of Regents permitted groups to be under the general supervision of a qualified teacher but under the immediate direction of students. This is exactly what we have in this case, and although such a standard set up by an administrative board is not conclusive on the courts as being due care, it is evidence to be given great weight in the decision of what constitutes due care under these circumstances.

But, even assuming a qualified teacher was not present and in charge of the class in which the infant claimant was injured, under the evidence in this case, that cannot be held to have been the proximate cause of the accident. Elizabeth Gardner testified in detail to the position she took on the mat and it conformed strictly to the details of the stunt contained in the syllabus, and she testified further to the effect that her injury occurred when she was in the exact position she was supposed to be in according to her instructions, which were those contained in the syllabus. No matter how competent or qualified the teacher, she was required to follow the syllabus, and, if she had followed the syllabus, as the practice-teacher did, the accident and injury would have resulted anyway. Although I do not agree that there was no competent or qualified teacher in charge, the competence or qualifications of the teacher had no

proximate bearing on the occurrence of the accident or resulting injury.

The judgment of the Appellate Division should be reversed and the judgment of the Court of Claims affirmed with costs.

CRANE, Ch. J., LEHMAN, HUBBS, LOUGHRAN and FINCH, JJ., concur in *per curiam* opinion; RIPPEY, J., dissents in opinion; O'BRIEN, J., taking no part.

Judgments affirmed.