## WEIL et al. v. UNITED STATES.

District Court, S. D. New York.

Nov. 8, 1939.

Sherman S. Rogers, of New York City, (Sherman S. Rogers and Herbert Burton Brill, both of New York City, of counsel), for Petitioners.

John T. Cahill, U. S. Atty., of New York City, (Maxwell S. McKnight, Asst. U. S. Atty., of New York City, of counsel), for defendant.

GODDARD, District Judge.

Both the plaintiffs and the defendant have made motions for a summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. The suit was brought to recover the sum of $6,361.64, which the plaintiffs paid under protest to the Collector of Internal Revenue as documentary stamp taxes on the transfer of certain corporate securities from the Mort-

gage Commission of the State of New York, and from Louis S. Pink, Superintendent of Insurance of the State of New York, acting as liquidator of the New York Title and Mortgage Company, to the plaintiffs herein. The plaintiffs are three trustees appointed by the Supreme Court of the State of New York, pursuant to the provisions of the Schackno Act, New York Laws 1933, c. 745, Unconsol.Laws N.Y. § 1796 et seq.

The question raised by the pleadings is whether or not this transfer was a taxable transfer within the contemplation of the provisions of Schedule A(9), Title 8 of the Revenue Act of 1926, as amended by Section 724a of the Revenue Act of 1932, 26 U.S.C.A. § 900 note. So far as is relevant here, the Act provides for a tax, with respect to Corporate Securities, "On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title * * * whether made by any assignment in blank or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale (whether entitling the holder in any manner to the benefit of such instrument or not) * * *".

Article 35(r) of Regulations 71 has been made applicable to Schedule A(9), Title 8 of the Revenue Act of 1926, as amended, and it exempts from taxation the following transfers:

"Transfers * * * which result wholly by operation of law are not subject to tax. Transfers of this character are those which the law itself will effect without any voluntary act of the parties, such as transfers of stock from decedent to executor".

Plaintiffs maintain that under the facts which are shown in the papers on file with the court, the transfer of the securities to them was by operation of law, and therefore, not taxable. The defendant asserts that by reason of the nature of the transaction the transfer did not result "wholly by operation of law" but was accomplished by voluntary acts on the part of the parties to the transfer.

The securities were originally held by the New York Title and Mortgage Company as collateral security for the Series C-2 certificates. Prior to August 4, 1933, the Mortgage Company defaulted in the payment of interest and principal on the certificates, as a result of which the Super-

intendent of Insurance of the State of New York took possession of its property by order of the New York State Supreme Court, made pursuant to Article XI of the New York Insurance Law, Consol. Laws N.Y. c. 28. The Superintendent of Insurance, as the rehabilitator, thereafter conducted the business of the Company for the benefit of the certificate holders until July 16, 1935, when the Supreme Court made and entered an order of liquidation. On or about May 16, 1935, pursuant to the provisions of the Mortgage Commission Act, Unconsol.Laws N.Y. § 1751 et seq., the Mortgage Commission took over from the Superintendent of Insurance all of the property of the New York Title and Mortgage Company, including the securities of the Series C-2 certificates. On or about January 15, 1936, acting under the Schackno Act, the Supreme Court made and entered an order approving a plan of reorganization of the mortgage investments represented by the Series C-2 certificates, and the transfer which is here sought to be taxed took place pursuant to this plan.

Assuming the facts to be exactly as stated by defendant, its contentions come down to the point that this final transfer was not wholly by operation of law because at least two voluntary acts on the part of the certificate holders were necessary in order to make it effective. First, a plan of reorganization had to be approved by the holders of two-thirds of the principal amount of the mortgage investments. Secondly, the certificate holders had the right to vote upon whether or not the securities should be transferred to trustees appointed by the certificate holders or to court appointed trustees, or whether the Mortgage Commission should continue to hold the securities.

In my opinion, these acts on the part of the certificate holders did not make the transfer to the trustees a voluntary one. They are merely procedural acts, which were part of the machinery by which a transfer, essentially by operation of law, was accomplished.

First, the transfer was not a transfer of the individual certificates but was a transfer of the corporate securities and mortgages underlying the certificates. Thus the original transferor was the New York Title and Mortgage Company, and not the individual certificate holders. So far as the Mortgage Company was concerned, the transfer from it to the Superintendent of

Insurance, and then from him to the Mortgage Commission, was by operation of law. The Company had nothing to say about the transfer. The law made it despite the Company. This much the defendant admits.

The Mortgage Commission and the Superintendent of Insurance, who held the legal title to the underlying securities which are the subject of the tax, had nothing to say about the transfer to the trustees. Like the previous transfers, this one was made pursuant to a statute, and after an order of the Supreme Court. No matter whether the holders of the legal title objected or not, they had to transfer and obey the court order.

■ Secondly, the fact that 66⅔% of the holders of the equitable title, or the certificate holders, had to acquiesce before the transfer to the plaintiffs could be effected, does not make this transfer a voluntary transfer. Under the Schackno Act, before a plan could be voted upon by the certificate holders, a Judge of the Supreme Court had to approve it. After the vote upon the plan, an order of the court was necessary before it could be effective and it is clear that in each instance in which the Supreme Court was required to act, it proceeded in more than a merely ministerial capacity and exercised its powers of discretion. Actually, the entire reorganization was directed and controlled by the court which the statute itself demanded. N.Y.Laws 1933, c: 745, § 8, Unconsol. Laws N.Y. § 1804.

The construction given to the Schackno Act by the New York Court of Appeals, supports the conclusion that the participation of the certificate holders in the reorganization proceedings was not a voluntary exercise of whatever power they might have had to effect a transfer of the collateral security for their certificates. Because of conditions over which they had no control, the certificate holders were forced by the Legislature of the State of New York to acquiesce in a reorganization of their rights. As Judge Lehman points out in People v. Title & Mortgage Company, 264 N.Y. 69, at page 93, 190 N.E. 153, at page 161, 96 A.L.R. 297, in which the Court of Appeals expressed the opinion that the Schackno Act was an exercise of the reserved powers of the State to change the obligations of private contracts in a time of public emergency:

"We may assume that, except for this statute, a certificate holder might stand upon his contractual rights and refuse to accede to any plan of reorganization of the rights of the holders of the mortgage investment, however advantageous the plan of reorganization might be. We may even assume that the Legislature could not pass a law which would compel a single holder to accede to such a plan, though approved by the court and consented to by a majority in amount of all the holders of interest in an investment, if only the rights of the parties to the contract were involved. * * * Unreasonable insistence on contractual rights may work serious injury to the economic welfare of all the people. The statute must be judged in the light of that fact. Under conditions as they exist at present, the vital interests of the community call for legislation by which the investments of great numbers of people may be conserved and ruin averted. The Legislature has characterized the situation as a 'public emergency.' It is immaterial whether we call the situation an emergency or not. It is a situation in which the Legislature could properly declare, as it has done, that it is 'essential for the public interest to provide a procedure under which such bonds, mortgages or other security may be liquidated in an orderly manner and under which the assets of the guaranty corporations may be administered and conserved equally and ratably in the interests of holders of mortgage investments.' "

Certainly where the State of New York, in the exercise of its reserved power, causes a transfer modifying the individual contracts of the certificate holders and making the required transfer subject to the discretion of a court, this is a transfer by operation of law.

■ Thirdly, the cases seem to support plaintiffs' contention as to the effect of the acts relating to these transfers. The exemption from taxation allowed to transfers "wholly by operation of law" is contained in an administrative regulation which purports to interpret the words "transfers of legal title" in the taxing statute. But the idea that transfers by operation of law should not be classified as taxable transfers, was first expressed by the New York Court of Appeals in a series of cases arising under the New York State Stamp Tax Act which used

**352**

almost exactly the same wording as the Act here involved. See Terminals & Transportation Corporation v. State, 169 Misc. 703, 8 N.Y.S.2d 282, and cases therein cited; Phelps-Stokes Estates v. Nixon, 222 N.Y. 93, 118 N.E. 241. The test of a taxable transfer developed by these cases was whether or not it was actually by operation of law. It is difficult to imagine a transfer by operation of law which does not incidently include some voluntary act. Even in the example given by the regulation, i. e., that of a transfer from a decedent to an executor, the execution of the decedent's will is, of course, a voluntary act. If the test used by the State courts is the correct one, and I think it is, then the case of Terminals & Transportation Corporation v. State, supra, strongly indicates that the present transaction constitutes a transfer by operation of law.

In addition, the case of United States v. Merchants National Trust & Savings Bank, 9 Cir., 101 F.2d 399, is persuasive to the effect that these transfers were by operation of law. In that case, a National Bank had sold its Trust Department to another Trust Company and the United States attempted to levy a stamp tax upon the individual trust securities which were transferred to the new Trust Company as successor trustee. The Court held that the transfer of the securities from the old trustee to the new trustee was by operation of law because a California Statute made such a transfer effective only upon the approval of the Superintendent of Banks of that State. The Court also held that the State law with respect to the nature of the transaction was determinative of whether or not the transfer was by operation of law. In the present situation, so far as can be ascertained from the pleadings, the legal relationship between the Superintendent of Insurance and the Mortgage Commission on one side, and the certificate holders on the other, was that of Trustee and cestui. See People v. Title & Mortgage Company, supra, 264 N.Y. at pages 79 and 89, 190 N.E. 153, 96 A.L.R. 297. Plaintiffs therefore took over the securities as Successor Trustee and under the authority of United States v. Merchants National Trust & Savings Bank, supra, a transfer to them is not taxable.

The motion of the plaintiffs for a summary judgment is granted.