HERBERT S. SCHWARTZMAN, Plaintiff, *v.* IRVING KIMLER, Defendant.

Civil Court of the City of New York, Trial Term, New York County, November 17, 1966.

*Richter & Levy* for plaintiff.  *Martin Blau* for defendant.

PATRICK J. PICARIELLO, J.  Action brought by plaintiff to recover the sum of $2,203.84 predicated upon the breach of a written agreement by defendant to indemnify plaintiff upon the latter's payment of certain corporate indebtednesses.

Defendant in his answer interposes, *inter alia,* the following four defenses:

1. Alleged agreement void for fraud;
2. Alleged agreement void for misrepresentation;
3. Alleged agreement void for lack of consideration; and
4. Action not maintainable pursuant to the provisions of section 270 to 278 of the Tax Law of the State of New York.

It appears that by written assignment dated on or about January 18, 1957, plaintiff sold, assigned and transferred to the defendant 25 shares of the common stock of Dealers Exchange

Corp., " standing in my name on the books of said Dealers Exchange Corp. represented by certificate No. 2 in the amount of fifteen shares and certificate No. 5 in the amount of ten shares, and I do irrevocably constitute and appoint said Irving Kimler attorney, to transfer the said stock on the books of the within named corporation with full power of substitution in the premises ".

Eight hundred dollars was paid to the plaintiff by the defendant for said shares.

The agreement further provided that " it is presently understood and agreed that said certificates above mentioned have been delivered to Bethlehem Investors, Inc., as security upon a loan made by said Bethlehem Investors, Inc., to Dealers Exchange Corp. That upon repayment of said loan and upon redelivery of the said certificates of stock, I (plaintiff) shall endorse said certificates and deliver them to (defendant)." The agreement also provided that the defendant had authority and power to endorse said certificates in plaintiff's name and deliver them to Dealers Exchange Corp. for transfer upon the latter's books and for the issuance of new certificates.

The subject agreement dated January 18, 1957, was executed by the defendant simultaneously with plaintiff's execution and delivery to the defendant of the above assignment, the latter constituting the consideration therefor. In and by the terms thereof the defendant guaranteed to save plaintiff harmless from certain personal liabilities which he, plaintiff, had incurred and which had arisen out of the conduct and operation of the business of Dealers Exchange Corp., and to indemnify him therefor.

The evidence shows the following:

Dealers Exchange Corp. (a closed corporation) was organized in 1956. At the time of its incorporation and on May 24, 1956, 50 shares of its capital stock were issued: 15 shares to the plaintiff, 15 shares to one Epstein, and 20 shares to one Fabricante. In August of 1956 plaintiff and Epstein purchased Fabricante's 20 shares (10 shares each). Part of the purchase price was evidenced by promissory notes, each in the sum of $100, which plaintiff and Epstein personally indorsed. On August 20, 1956, the appropriate transfer of these 20 shares of stock to plaintiff and Epstein was noted on the stock and transfer ledger book of the corporation.

On August 21, 1956, the entire 50 shares, constituting all of the issued and outstanding shares of the capital stock of the corporation, were deposited with Bethlehem Investors, Inc., as security for the repayment of a loan of $2,500 evidenced by a promissory note dated on that day, and said promissory note

was personally indorsed by the then two sole stockholders, plaintiff and Epstein.

Thereafter and on or about January 18, 1957, both the above assignment and the subject agreement were executed by the parties hereto.

Dealers Exchange Corp. went out of business sometime in the latter part of 1957 and before the loan to Bethlehem Investors, Inc., was repaid. The certificates of stock deposited as collateral security were therefore not redeemed. Both plaintiff and Epstein were sued on the loan as personal indorsers, a judgment was obtained against them and one half of said judgment was paid by each of them. It is to recover this payment made by the plaintiff as well as his payments on the two other corporate indebtednesses on which he had made himself personally liable and which were covered in the subject agreement that the action was instituted.

There can be no question but that at the time of the assignment and transfer of the 25 shares of stock by plaintiff to defendant he, the defendant, knew that the certificates of the shares of stock had been physically delivered to Bethlehem as security for the payment of the corporate indebtedness. There also can be no question but that defendant knew of the corporate indebtedness to Fabricante, of plaintiff's personal liability on those two obligations and also of plaintiff's personal liability to the United States Treasury Department for withholding taxes owed by the corporation.

The court, after considering all the evidence and the law applicable thereto, makes the following disposition of the four separate and affirmative defenses interposed by the defendant, seriatim:

1 and 2: *Fraud and misrepresentation.*

It is defendant's claim that he was caused to make the investment in the corporation on Epstein's misrepresentation of the true financial plight and future propensities and capacities of the business of the corporation; that he relied on this representation and that Epstein induced him to make the investment although he, Epstein, knew the representation to have been false. The court finds that the evidence adduced at the trial in no way sustains defendant's contention. Defendant knew of the corporate indebtednesses at the time he made the investment. Defendant knew that the corporation had deposited all of its outstanding and issued capital stock as security for a $2,500 loan. This certainly is not an indication of good financial condition. Also on January 16, 1957, just two days before the

subject agreement was executed by the defendant, his son-in-law loaned the corporation $1,000. This loan was evidenced by a promissory note executed by the corporation and personally indorsed by Epstein and the defendant himself. So that it becomes quite obvious that the defendant must have known of the poor fiscal status of the corporation at the time he made the investment.

And, with respect to the corporation's future prospects and business, it has been held that reliance on a statement of opinion as to the prospects of a new enterprise — assuming that the defendant under the circumstances of this case would rely on Epstein's statement rather than on his own investigation and knowledge — does not create a right of action for either fraud or misrepresentation. (Cf. *Mecum* v. *Mooyer*, 166 App. Div. 793; *Carney* v. *Morrison*, 223 App. Div. 244.) These two defenses were dismissed by the court on plaintiff's motion made at the conclusion of the trial.

### 3. *Lack of consideration.*

The defendant contends there was no consideration for the subject agreement because there was no actual or physical delivery of the stock certificates by the plaintiff under the assignment. He invokes section 162 (of article 6 of the Personal Property Law entitled " Transfers of Shares of Stock Corporations ") which provides that " title to a certificate and to shares represented thereby can be transferred only (a) By *delivery of the certificate* endorsed either in blank or to a specified person by the person appearing by the certificate to be the owner of the shares represented thereby, or (b) By *delivery of the certificate* and a separate document containing a written assignment of the certificate or a power of attorney to sell, assign or transfer the same or the shares represented thereby, signed by the person appearing by the certificate to be the owner of the shares represented thereby. Such assignment or power of attorney may be either in blank or to a specified person." (Italics supplied.)

Since the certificates of stock had been pledged, there could not be delivery thereof as provided in the cited section. Consequently, urges the defendant, since the consideration for the subject agreement was the sale and transfer of the stock to the defendant, the failure to deliver the certificates and thereby pass title thereto rendered the subject agreement unenforcible or void for lack of consideration.

The question thus posed is: What effect, if any, does section 162 of the Personal Property Law have upon the situation in this lawsuit, where there has been no delivery of the certificates?

The assignment dated January 18, 1957 is clear and unambiguous. It must be construed under the circumstances of this case as an agreement whereby plaintiff agreed to sell and the defendant agreed to purchase the former's shares of stock in the corporation with a provision for future delivery of the certificates as therein provided. The purchase was consummated on January 18, 1957, when the defendant paid plaintiff the sum of $800 and executed the subject agreement of indemnification to the plaintiff. The sale transaction was completed on the same day when a transfer of the certificates representing plaintiff's holdings was noted on the stock and transfer ledger of the corporation and title to such shares, equitable if not legal, then passed to the defendant. (See *Matter of Szabo,* 10 N Y 2d 94.)

The question still unanswered is how, when or under what circumstances is it necessary that there be an actual delivery of the certificate of stock in order to pass title thereto, as provided in the cited section?

The court is of the opinion that the failure to make delivery as in said section provided would be of particular concern only if the rights of third parties became involved. The purpose of this section is to protect a corporation in dealings with its stockholders (for instance, as to payment of dividends, mailing of proxies, notices of meetings of stockholders, etc.). It was also intended as a protection to third parties who have taken delivery of certificates of stock and also tends towards the negotiability of stock certificates to the extent that it gives an assurance of title, a condition essential according to the practices of modern stock exchanges. (See *Iowa Securities Corp.* v. *Ridgewood Nat. Bank,* 106 Misc. 335.)

The section does not alter or change the nature of the assignment, nor was it so intended, or the interpretation or effect thereof as between plaintiff and defendant. (See *Parsons* v. *First Trust & Deposit Co.,* 269 N. Y. 630.)

Rather, the court opines, it is section 171 of the Personal Property Law that controls this situation. This section, entitled " Ineffectual attempt to transfer amounts to a promise to transfer," reads as follows: " An attempted transfer of title to a certificate or to the shares represented thereby without delivery of the certificate shall have the effect of a promise to transfer *and the obligation, if any, imposed by such promise shall be determined by the law governing the formation and performance of contracts.*" (Italics supplied.)

Plaintiff complied with this obligation under the assignment by effecting the transfer of the certificate of stock to the defend-

ant on the stock and transfer ledger of the corporation. He thereby divested himself of title and defendant thereby became the equitable, if not legal, owner thereof. (See *Parsons* v. *First Trust & Deposit Co., supra.*) Defendant understood and had agreed that the original certificates could not and would not be actually delivered to him under the circumstances until the corporate indebtedness to Bethlehem Investors, Inc., had been paid by the corporation. There was complete mutuality. Neither party, by his own act, could have defeated the contract. The defendant never brought action for delivery of the certificates (*vide Matter of Monitor Co.* v. *Confianza Furniture & Appliance Corp.*, 142 N. Y. S. 2d 140), even after this indebtedness had been paid by the personal indorsers. Indeed, he continued to be a stockholder on the books of the corporation although he did not have actual physical possession of the certificates of stock. This *status quo* was maintained until the corporation went out of business.

The court finds that the subject agreement was not lacking in consideration; indeed, it was pregnant with it.

Under the circumstances, the third defense of lack of consideration is also dismissed.

4. *The within action is not maintainable pursuant to the provisions of sections 270 and 278 of the Tax Law of the State of New York.*

These sections relating to a requirement of payment of tax on transfer of certificates of stock are not applicable to a sale of stock with an agreement promptly to transfer certificates on the stock and transfer ledger of the corporation but without a delivery of the certificates or a transfer thereof. Moreover, the effect of these provisions in respect to the payment of tax on the transfer of stock does not apply to the capital stock of the corporation.

In the case of *Waddle* v. *Cabana* (220 N. Y. 18) which involved an agreement for the purchase and sale of certain shares of stock in a corporation at an agreed price, no stamps were attached to the agreement and there was no delivery of the certificate of stock. The court there held (p. 27): "The contract is not unenforceable for failure to comply with the Tax Law (sections 270–278) relative to taxable transfers of stock. When the stock certificates are actually transferred the seller must stamp them to make an effective delivery in fulfillment of the contract * * * and the statute will then be fully satisfied." (See, also, *Bean* v. *Flint*, 204 N. Y. 153; *Luitwieler* v. *Luitwieler Pumping Engine Co.*, 231 N. Y. 494; *Gaffney* v.

*People's Trust Co.*, 191 App. Div. 697; *Phelps-Stokes Estates v. Nixon*, 222 N. Y. 93.)

Under the circumstances, defendant's fourth affirmative defense is also dismissed.

The court finds, on all the evidence, that plaintiff has sustained his burden of proof. Let judgment be entered in favor of the plaintiff and against the defendant for $2,203.84, with interest from June 1, 1961 and costs. Counterclaim is dismissed.