J. W. PERRY COMPANY *v.* CITY OF NORFOLK.

H. WHITE *v.* CITY OF NORFOLK.

ERROR TO THE SUPREME COURT OF APPEALS OF THE STATE OF VIRGINIA.

Nos. 103, 104.  Argued March 16, 1911.—Decided April 17, 1911.

Whether a municipality may list and tax its own property is a matter of state practice and, except as it may affect a right previously acquired and protected by the Federal Constitution, presents no Federal question.

This court in order to determine whether a contract has been impaired within the meaning of the Federal Constitution has power to decide for itself what the true construction of the contract is.

A contract of exemption may be impaired by wrongful construction as well as by an unconstitutional statute attempting a direct repeal.

A lease of property belonging to a municipality in which the lessees have expressly agreed to pay taxes due the state or Federal Government is not impaired by an assessment made by the municipality under power to tax acquired subsequent to the making of the lease.

Parties to a lease by a municipality not then possessing taxing powers are chargeable with notice that the power to tax may be subsequently conferred, and the conferring of such power does not impair the contract in the lease if there is no exemption expressly contained therein.

Doubts and ambiguities as to exemptions from taxation are resolved in favor of the public.  *St. Louis* v. *United Railways,* 210 U. S. 273.

108 Virginia, 28, affirmed.

FROM the bill in 103, to enjoin the collection of city taxes, it appears that prior to 1792 the borough of Norfolk, Virginia, existed as a municipality of limited power.   It

had a mayor and a council, but no power to tax. The town owned the Fort land, and appointed commissioners to subdivide the tract and let out the lots at public outcry. Thereupon the borough "demised, leased and to farm let lot No. 10 to Richard Evers Lee, his executors, administrators and assigns, from August 26, 1792, for and during the term of ninety-nine years, and after that time renewable for the further term of ninety-nine years, and so on forever," he and they to pay yearly the rent of £6.6 and "the public taxes which shall become due on said land." It was provided that if there should be arrears for three years in paying rent or taxes, the town should advertise and lease out the lots and improvements for the remainder of the term of ninety-nine years, said Lee and his assigns to make good the deficiency, if any, between the first and last prices, together with all arrears of rent and taxes, the overplus, if any, to be paid over to said Lee or his assigns. If the rent and taxes were paid as stipulated the borough and its successors were to renew the lease for the further term of ninety-nine years, and so on forever. The leases were renewed in 1892 on practically identical terms. Subsequently, the eastern portion of lot 10 was assigned to John L. Roper and the western portion to the J. W. Perry Company, who, "relying on the stipulations and agreements therein, purchased the lease, and, at great expense erected costly improvements on the land." The bill charged that "it was the intention of all the parties, in both the original and renewal leases, that the stipulation as to the payment of public taxes applied solely to such taxes as might be imposed by Virginia and the United States, and neither the borough nor the city of Norfolk had ever attempted to impose any municipal tax upon the property. But "though the city owns the fee, it has for the year 1906 caused the lot to be assessed in the name of it, the said city of Norfolk, at a valuation of $21,000, and intends to collect the tax of $346 from the lessees of lot 10."

The bill also charged that the buildings, on being attached to the land, became the property of the city as landlord, and likewise free and clear from the payment of city taxes, notwithstanding which it had assessed the improvement to the lessee at a value of $6,500 and demanded the tax thereon.

Lot 9 was held by White on substantially identical terms, except that the renewal lease made in 1892 provided that the lessee should "pay all rent and all state and national taxes." The city contended that this change was without consideration and did not modify the rights or liabilities of either party, because from the instrument as a whole it appeared that there was no intention to change, but only to renew and continue in force the original lease of 1792.

In each case it was alleged that the assessment and collection of taxes for city purposes impaired the obligation of the lease contract.

The trial judge granted perpetual injunctions. Those rulings were reversed by the Court of Appeals of Virginia (108 Virginia, 28), and plaintiffs brought the cases here, assigning as error that the collection of taxes by the city of Norfolk, in pursuance of authority conferred subsequent to the leases, impaired the obligations of the contracts.

*Mr. Tazewell Taylor* and *Mr. Walter H. Taylor*, with whom *Mr. William Leigh Williams* was on the brief, for plaintiffs in error:

As to the authority and duty of this court, see *Jefferson Branch Bank* v. *Skelly*, 1 Black, 436; *Huntington* v. *Attrill*, 146 U. S. 657; *Bryan* v. *Board of Education*, 151 U. S. 639; *Mobile & Ohio R. R. Co.* v. *Tennessee*, 153 U. S. 495.

The contract is a lease. *State* v. *Mississippi Bridge Co.*, 134 Missouri, 321; *Wilgus* v. *Commonwealth* (Ky.), 9 Bush, 556; *Taylor* v. *Taylor*, 47 Maryland, 295; *Thruston*

v. *Mustin,* Fed. Cases No. 14,013; *Goodwin* v. *Goodwin,* 33 Connecticut, 314; *Moss Point Lumber Co.* v. *Supervisors* (Miss.), 42 So. Rep. 298; *Ware* v. *Washington,* 6 Smedes & M. 741; *Dillingham* v. *Jenkins,* 7 Smedes & M. 479; *James* v. *Kibler,* 94 Virginia, 173; *Wells.* v. *Savannah,* 181 U. S. 531.

In the absence of contract stipulations to the contrary, the obligation rests upon the lessor to pay taxes on his interest. Taylor on Landlord and Tenant (4th ed.), § 341; Wood on Landlord and Tenant (2d ed.), § 414.

The contract in this case imposes no obligation on the lessee to pay the city taxes on the fee simple estate belonging to the city of Norfolk. Public taxes are not city taxes in this case. *Morgan* v. *Cree,* 46 Vermont, 773.

The court should put itself in the place of the parties making the contract. *Pressed Steel Car Co.* v. *Eastern Ry. Co.,* 121 Fed. Rep. 611; 13 Henning's Statutes at Large, 112, 241, 336; *Black* v. *Sherwood,* 84 Virginia, 906; *Love* v. *Howard,* 6 R. I. 116; *Woodruff* v. *Oswego Starch Co.* (N. Y.), 68 N. E. Rep. 994; *Brown* v. *Wagner,* 1 Pears. (Pa.) 254; *Bolling* v. *Stokes,* 2 Leigh (Va.), 178.

The city of Norfolk is assessing itself on its own property and endeavoring to make the lessees pay the same. *Trammel* v. *Faught,* 74 Texas, 557; 12 S. W. Rep. 317; 2 Cooley on Taxation, 822; Clark on Contracts, 9; *Byrne* v. *Byrne,* 94 California, 576; *Galveston Wharf Co.* v. *City of Galveston,* 63 Texas, 14; *Lowe* v. *Lewis,* 46 California, 549; *New Orleans* v. *Commissioners,* 12 La. Ann. 240; *Penick* v. *Foster* (Ga.), 58 S. E. Rep. 773; 12 L. R. A. (N. S.) 1163; *Clark* v. *Coolidge,* 8 Kansas, 195; *Scott* v. *Society &c.,* 59 Nebraska, 571; 81 N. W. Rep. 624; *Herriott* v. *Potter* (Ia.), 89 N. W. Rep. 92; *Soulard* v. *Peck,* 49 Missouri, 478; 2 Underhill on Landlord & Tenant, §§ 605–607; *Phila., W. & B. Ry. Co.* v. *Appeal Tax Court,* 50 Maryland, 397; *Jetton* v. *University of the South,* 208 U. S. 489.

Covenants in deed against incumbrances apply only to

those of third persons. *Horrigan* v. *Rice*, 39 Minnesota,
49; 38 N. W. Rep. 765.

The law of principal and surety is applicable. *Hardaway*
v. *National Surety Co.*, 211 U. S. 552; *United States* v.
*Burbank*, 4 Wall. 186.

The parties bear the same relation with reference
to the improvements. *Kutter* v. *Smith*, 2 Wall. 491; *Bass*
v. *Metropolitan Westside Ry. Co.*, 82 Fed. Rep. 857; *Fraer*
v. *Washington*, 125 Fed. Rep. 280; *People* v. *Barker*, 153
N. Y. 98; *Madigan* v. *McCarthy*, 108 Massachusetts, 376;
*West Shore Ry. Co.* v. *Wenner*, 75 N. J. L. 494; §§ 465, 466,
Code of Virginia (1904).

The leasehold can and should protect lessees' contract.
See act of March 14, 1906, granting charter to city of Nor-
folk; ordinance of the city of Norfolk imposing taxes for
the year 1906; and as to allegations of contract see *Murray*
v. *Charleston*, 96 U. S. 432; *Northern Pac. R. Co.* v. *Minne-
sota*, 208 U. S. 583, 591; see also *New York* v. *State Tax
Commissioners*, 199 U. S. 1; *Chicago* v. *Sheldon*, 9 Wall. 50.

*Mr. Nathaniel T. Green* for defendant in error:

The judgment of the Supreme Court of Appeals of Vir-
ginia should be affirmed because it proceeds on non-federal
grounds sufficient to sustain the same. *Northern Mis-
souri Company* v. *McGuire*, 20 Wall. 46; *Henderson
Bridge Co.* v. *Henderson City*, 141 U. S. 679; *Berea College*
v. *Kentucky*, 211 U. S. 45.

There is in truth no contract of exemption from city
taxation in this case and therefore no impairment of the
obligation of a contract. *Home Telephone Company* v.
*Los Angeles*, 211 U. S. 265, 273; *St. Louis* v. *United Rail-
ways Co.*, 120 U. S. 266, 273; *Metropolitan Street Railway
Co.* v. *New York*, 199 U. S. 1.

Not only is this true, but the ordinary meaning of the
word "public" embraces the taxes involved in this suit.
*City Cemetery* v. *Buffalo*, 46 N. Y. 506, 510.

The conclusion is that in this case there is absolutely no contract exempting plaintiffs in error from liability for these taxes, and it is only by the exercise of the utmost ingenuity that even a claim for such exemption can be produced. *North Missouri Ry. Co.* v. *McGuire,* 20 Wall. 46.

Mr. Justice Lamar, after making the foregoing statement, delivered the opinion of the court.

In 1792, at a time when it had no right to tax, the municipality of Norfolk, Virginia, leased to Lee and others several lots of land for ninety-nine years, renewable forever, the lessees and their assigns to pay the annual rent and "the public taxes which shall become due on said land." Subsequently the city was given the power of taxation, but made no effort to assess these lots until 1906. The lessees then sought to enjoin their collection on the ground that the "public taxes," they had assumed, were those which might be due to the State and to the United States. They contended that for Norfolk to assess land belonging to Norfolk for taxes payable to Norfolk constituted an invalid charge, and was not a lawful public tax of the kind which the lessees had agreed to pay, and that if such a tax could be assessed it was by virtue of statutes passed since the contract was made, and for the city to exert this new statutory power against them would impair the obligation of their contract.

In support of their claim that the city as lessor could not tax its own property, so as to make it a valid public tax payable by the lessee, they rely on the general rule that taxes are assessed to the owner, and as the landlord receives the rent he ought to bear the burdens imposed upon the property. On the authority of *State* v. *Mississippi Bridge Co.,* 134 Missouri, 321; *Thruston* v. *Mustin,* Fed. Cases, 14,013, and like cases, they insist that this is a liability arising out of the relation of landlord and tenant,

and is not limited to short term leases, but applicable to those for ninety-nine years, renewable forever.

It is true that in the present case the indenture uses apt words to create a lease, and the Virginia court held that it was technically such. But there are other and controlling features which show that, even if the legal title is in the city, the lessees have rights different from those usual in a mere leasehold estate.

On condition broken, they do not *ipso facto* lose all interest in the property and its proceeds. The contract does not contain the common stipulation that the tenant shall be compensated for his permanent improvements. On the tenant's default the city cannot at once enter into possession, but "the lot and improvements shall be leased out at public outcry for the remainder of the term," and after deducting unpaid rent and taxes the overplus, if any, shall be paid to the lessees. This overplus would represent, in part, the value of permanent improvements and also of the unexpired term. Selling the city's property to pay rent due the city is not at all consistent with the idea of a mere lease. It indicated rather that the tenant had a substantial interest in the property which was security for the payment of whatever he owed the city. The contract creates an estate somewhat like the perpetual lease of the civil law, where the tenant was for many purposes treated as owner, and liable for taxes. Merlin Rep., vol. 10, p. 232; Cooper's Inst. 277, 278; Sohmn's Inst., 3d ed., 346. It was also similar in its nature to ground rent, where an annual rental and public taxes are perpetually charged on the land, instead of a gross sum being paid or secured. There the grantor is treated as having a fee in the rent reserved, and the grantee a fee in the land, subject, among other things, to the payment of public taxes. Duane on Landlord & Tenant, 96; Cadwallader on Ground Rent, 101; *Robinson* v. *County of Allegheny*, 7 Pa. St. 161.

The Court of Appeals held that in Virginia the general

rule that the landlord is responsible for the taxes "has no application to the case of a perpetual leaseholder where the tenant is in effect the virtual owner of the property and entitled to its use forever. For the purposes of taxation the mere legal title remaining in the landlord will be disregarded." It adopted that part of the language in *Wells* v. *Savannah*, 87 Georgia, 397, affirmed in 181 U. S. 531, where, in speaking of the liability of one who had a perpetual lease and a right to convert it at will into a fee, Judge Bleckley said: "The value of property consists in its use, and he who owns the use forever, though it be on condition subsequent, is the true owner of the property for the time being." *Crowe* v. *Wilson*, 65 Maryland, 479; *Brainard* v. *Mayor of Colchester*, 31 Connecticut, 407.

Ordinarily it would be a useless thing for a city to tax its own property. But this can be done under Virginia practice, and is not a vain thing if thereby property of the city, subject to taxation, is listed in its name as holder of the legal title, so as to fix the amount of the tax on the property which the tenant may have agreed to pay. Cooley on Taxation (3d ed.), 263. This ruling of the Virginia court presents no Federal question, but does establish that the tax was not illegal, as claimed, but was based on an assessment valid under the laws of the State.

Whether it is a "public tax" contemplated by the contract, or whether forcing the lessees to pay it impairs that contract, is a matter we must consider; for a valid contract of exemption from taxation may be impaired by wrongful construction as well as by an unconstitutional statute attempting a direct repeal. This court, therefore, "has power, in order to determine whether any contract has been impaired, to decide for itself what the true construction of the contract is." *Huntington* v. *Attrill*, 146 U. S. 657; *Bryan* v. *Board of Education*, 151 U. S. 639; *Mobile & Ohio R. R. Co.* v. *Tennessee*, 153 U. S. 495; *Jefferson Branch Bank* v. *Skelly*, 1 Black, 446.

It is admitted that the lessees have expressly agreed to pay taxes due Virginia or the Federal Government, regardless of the character of the estate created. And, while it is true that when the lease was made the borough had no authority to tax, both parties were charged with notice that such power might, and probably would, be conferred when increase of population made it necessary. Even if the borough could have made a valid contract of exemption in 1792, there is nothing to show that it did so. On the contrary, the provision that the lessee was to "pay public taxes" was sufficiently comprehensive to embrace municipal taxes whenever they could thereafter be lawfully assessed on land or the improvements which were a part of the land. Where one relies upon an exemption from taxation, both the power to exempt and the contract of exemption must be clear. Any doubt or ambiguity must be resolved in favor of the public. *St. Louis* v. *United Railways*, 210 U. S. 273. Here there is not only no language of exemption, but a positive agreement on the part of the lessees to pay public taxes on the land. In compelling them to do so the contract is enforced instead of impaired. The judgment of the Supreme Court of Appeals of Virginia is therefore

*Affirmed.*