ELECTRIC BOND AND SHARE COMPANY, Respondent, *v.* THE STATE OF NEW YORK, Appellant.

(Claim No. 23648.)

Third Department, January 14, 1937.

*John J. Bennett, Jr., Attorney-General* [*Leon M. Layden, Second Assistant Attorney-General,* of counsel], for the appellant.

*Alex M. Hamburg* [*Saul Gordon* of counsel], for the respondent.

RHODES, J. The claimant has recovered judgment for taxes paid under protest, such taxes being in the form of stock transfer stamps purchased by it and attached to a copy of the certificate of consolidation hereinafter referred to.

The situation arises out of the consolidation of the Electric Bond and Share Securities Corporation and the Electric Bond and Share Company which was effected in March, 1929, pursuant to section 86 of the Stock Corporation Law, the new corporation taking the name of one of the consolidating companies. At the time of the consolidation the Electric Bond and Share Corporation owned all of the issued common stock of the Electric Bond and Share Company, the other consolidating corporation, but held no shares of stock in other corporations. The Electric Bond and Share Company owned shares of stock in various corporations not parties to the consolidation, and the question of tax involves solely the transfer of such shares of stock owned by the consolidating corporation, Electric Bond and Share Company.

The effect of the consolidation was to dissolve all the constituent corporations, terminate their existence in toto except for certain limited purposes and to create a new corporate entity out of the component bodies. (See Stock Corporation Law, §§ 88, 89, 90; *People* v. *N. Y., C. & St. L. R. R. Co.,* 129 N. Y. 474; *Miner* v. *N. Y. C. & H. R. R. R. Co.,* 123 id. 242; *People ex rel. New York Phonograph Co.* v. *Rice,* 57 Hun, 486; affd., on opinion below 128 N. Y. 591.)

While the cases cited related to consolidations under other statutes the rule therein stated applies here.

The effect of such consolidation is to transfer to and vest in such new corporation all the property of the constituent corporations. (Stock Corporation Law, § 89.)

The court below held that the consolidation of the constituent corporations under said section 86 vested in the new corporation, the claimant herein, the title to said shares of stock and that such transfer was solely by operation of law and not subject to the stock transfer tax imposed by section 270 of the Tax Law.

Said section 270 imposes a tax " on all sales, or agreements to sell, or memoranda of sales and all deliveries or transfers of shares or certificates of stock, or certificates of rights to stock, or certificates of deposit representing certificates taxable under this article, * * * whether made upon or shown by the books of the association, company, corporation or trustee, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of sale or transfer, whether intermediate or final, and whether investing the holder with the beneficial interest in or legal title to said stock, or other certificates taxable hereunder, or merely with the possession or use thereof for any purpose, or to secure the future payment of money, or the future transfer of any such stock, or certificates."

Within the reasoning of *Phelps-Stokes Estates* v. *Nixon* (222 N. Y. 93) it would seem that such tax relates to a sale or transfer within the ordinarily accepted meaning of these terms, and does not apply to a transfer occurring merely by operation of law. We think the court below properly held that the transfers in question are not taxable under said section 270.

In behalf of the appellant it is asserted that the claim herein was not properly filed and that, therefore, such failure to comply with the law relative to filing constitutes a complete bar to recovery herein. The claim was properly filed with the clerk of the Court of Claims and was duly filed with the State Tax Commission, but no written claim or written notice of intention to file claim against the State was filed with the Attorney-General. It is this failure to file with the Attorney-General which the appellant argues constitutes a failure to comply with the requirements of the law as to the filing of claims.

Said section 280 of the Tax Law provides that if stamps shall have been erroneously affixed, the Tax Commission may, upon presentation of a claim for the amount thereof, pay the same, and " Such claims shall be presented within ninety days after such erroneous affixing * * *. If the Tax Commission rejects a

claim or any part thereof, the claimant may file a claim for the recovery of such sum as the Tax Commission shall have refused to allow, with the Court of Claims, which shall constitute a private claim against the State and shall be subject to all the provisions of law governing such claims, except that all claims so presented shall be filed with the Court of Claims within ninety days from the date on which such claim shall be rejected by the Tax Commission."

The appellant says that the foregoing clause, that the claim " shall be subject to all the provisions of law governing such claims," brings it within the terms of section 15 of the Court of Claims Act as it existed at the time applicable, which prescribed that a written claim or written notice of intention to file a claim be filed in the office of the clerk of the Court of Claims and with the Attorney-General.

Section 280 of the Tax Law seems to outline the complete procedure for presenting a claim of the kind before us; its only requirement as to filing is that the claim be filed within the required time with the Tax Commission and with the Court of Claims. It does not in express terms require the claim to be filed with the Attorney-General, and if it is to be held that such filing is necessary, such language must be interpolated into the terms of said section.

Whatever the meaning of the phrase in said section 280 that the claim shall be subject to all the provisions of law governing such claims, we do not think it is to be construed as requiring filing of the claim with the Attorney-General; filing with the Tax Commission is evidently provided as a substitute for notice to the Attorney-General.

There is a practical reason for such a construction; in ordinary cases claims are to be filed with the Attorney-General for the reason that it is necessary that some official charged with the duty of protecting the interests of the State have notice of the claim to the end that it may be properly defended; in the case of an erroneous stamp tax the Tax Commission has an interest in seeing that its action is upheld, hence filing with the Attorney-General is not of practical importance.

The judgment should be affirmed, with costs.

HILL, P. J., CRAPSER and HEFFERNAN, JJ., concur; BLISS, J., takes no part in the decision.

Judgment affirmed, with costs.