**UNITED STATES v. MERCHANTS NAT. TRUST & SAVINGS BANK.**

No. 8849.

Circuit Court of Appeals, Ninth Circuit.
Jan. 20, 1939.

James W. Morris, Asst. Atty. Gen., and Sewall Key, J. Louis Monarch, E. F. Mc-Mahon, and L. W. Post, Sp. Assts. to Atty. Gen., and Ben Harrison, U. S. Atty., E. H. Mitchell, Asst. U. S. Atty., and Eugene Harpole, Sp. Atty., Bureau of Internal Revenue, all of Los Angeles, Cal., for appellant.

Claude I. Parker, John B. Milliken, and Bayley Kohlmeier, all of Los Angeles, Cal., for appellee.

Before WILBUR and DENMAN, Circuit Judges, and ST. SURE, District Judge.

DENMAN, Circuit Judge.

This is an appeal from a judgment of the district court in favor of the appellee bank, the taxpayer, in the amount of $1,019.37, with interest and costs, in an action brought by the taxpayer for a refund of a stamp tax assessed against and paid by it upon the transfer of the legal title to certain stocks and securities. These were held by taxpayer, a banking and trust company, as trustee of the many private trusts constituting its trust company business. That business and its trusts were sold to the Bank of America of California, also a banking corporation, in accordance with Section 31 of the California Bank Act. It is agreed that there was a transfer of the legal title to the shares in the several private trusts.

The tax was assessed and collected under the "transfer of legal title" provision of the Revenue Act of 1926, Title 8, § 800, and Schedule A(3), 44 Stat. 99, 101, 26 U.S.C.A. § 900, it being so stipulated in the following language:

"The tax contested in the amount of $1,042.48, was assessed and collected upon the passing of title of certain stocks from plaintiff as Trustee to Bank of America of California as Trustee. * * *"

Pursuant to Section 31 of the California Bank Act permitting the sale of all of the business of a bank or of all the business of any of its departments, the two banks entered into an agreement of sale and purchase of the business of the taxpayer. The transaction alleged to be taxable concerned the sale of the trust department portion of the taxpayer's business. Since the California Bank Act provides for the sale of such a trust department without the sale of the entire business of the bank, it is the provision for the sale of a trust business with which this litigation is concerned. Primarily to be considered is the provision of the act treating the transfer as by operation of law effected upon the approval of the agreement given by the California state superintendent of banks.

One of appellant's contentions is that the California law governing the transfer between these two corporations of the legal title to the shares in the several private trusts, does not bring the transfer within either of two exempting provisions of Treasury Regulations 71, Art. 35 (h) and (q) promulgated under the Revenue Act of 1926, approved July 7, 1928.[1] They are:

"Art. 35. *Sales and transfers not subject to tax.*—The following transactions are not subject to the tax:

\*     \*     \*     \*     \*     \*

"(h) The transfer of shares or certificates of stock from the name of a deceased or resigned trustee to the name of a substituted trustee appointed in accordance with the terms of the trust agreement, which is a transfer resulting wholly by operation of law.

"(q) Transfers of shares or certificates of stock which result wholly by operation of law are not subject to the tax. Transfers of this character are those which the law itself will effect without any voluntary act of the parties, such as transfer of stock from decedent to executor."

The taxpayer contends that under the California law, Section 31 of the Bank Act, the transfer of the legal title was a transfer resulting wholly by operation of law, both in the sale of the trust business and

---

[1] Appellant does not present to us the question of the Treasury's power to make these regulations and it is not a matter litigated between the parties. However, the Revenue Act of 1932, passed after approval of Regulations 71, Art. 35 (h) and (q), promulgated under the Revenue Act of 1926, repealed the provision taxing the "transfer of legal title" to corporate stock. Practically the same provisions in Regulations 71, Art. 35 (h) and (r) were, in July, 1932, approved for the later act. White v. U. S., 59 S.Ct. 179, 184, 83 L.Ed. ——; Hartley v. Commissioner, 295 U.S. 216, 220, 55 S.Ct. 756, 79 L.Ed. 1399; Helvering v. Bliss, 293 U.S. 144, 151, 55 S.Ct. 17, 79 L.Ed. 246, 97 A.L.R. 207.

in the transfer between the two trustees holding the trusts in California.

■ A. The taxpayer offers the contention that there was in effect no transfer of legal title whatsoever, claiming that each trust remained identical as a separate entity from the trustee, that there was no transfer of the stocks from or by the trusts, and that the mere substitution of trustee did not constitute such a transfer of legal title as is contemplated by the statute. However, the taxpayer is precluded from this contention by its position taken in its complaint below. That alleged that there was a transfer from the one trustee to the other. Also by its stipulation of facts concerning the title to the stocks, that they "were held by plaintiff as trustee and which passed to the Bank of America as trustee in such transaction. * * *"

■ The taxpayer does not cite any court decision in which the contention there was no transfer of legal title between the two trustees has been considered, but bases its argument upon Section 219 of the Revenue Act of 1926, 44 Stat. 32, 26 U.S.C.A. §§ 161–167, which relates to income tax, and upon the statement in the "General Definitions" (Section 2) of the Revenue Act of 1926, 44 Stat. 9, 26 U.S.C.A. § 1696, that the term "person" means, inter alia, "a trust".

The language of the stamp tax provisions under which the tax was assessed is unlike that employed in the income tax provisions of Section 219; there is not the specific mention of trusts nor their treatment as separate entities in the wording of the statute that occurs in the income tax section referred to.

Persuasive of this conclusion that under the stamp tax provisions the trustee is to be regarded as holding legal title, is the reenactment of the stamp tax "on transfers of legal title" after the regulations above cited treating the transfer of titles to trust estates as from one trustee to another, which we have detailed in the preceding footnote. White v. U. S., 59 S.Ct. 179, 184, 83 L.Ed. ——; Hartley v. Commissioner, 295 U.S. 216, 220, 55 S.Ct. 756, 79 L.Ed. 1399; Helvering v. Bliss, 293 U.S. 144, 151, 55 S.Ct. 17, 79 L.Ed. 246, 97 A.L.R. 207.

■ B. Appellant contends that even though the transfer of legal title between the trustees is, under the California statutes governing corporate transfers, a transfer wholly by operation of law, nevertheless, the government may apply a different law of its own in justification of its assessment and collection. It cites a statement in Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199, that "* * * State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law. * * *"

The tax statute here involved by necessary implication makes its own operation dependent upon state law. Lyeth v. Hoey, 59 S.Ct. 155, 158, 83 L.Ed. ——. There is cited to us no federal law or statute providing for the method of transfer "by operation of law" of a trust estate from one corporate trustee to another, where the trust business of one is sold to the other. The questions of whether legal title to this personal property has been transferred and whether the transfer was by operation of law necessarily depend for their answer upon state law.

Among the many cases in which federal tax statutes, though not expressly providing for their dependency upon state law, nevertheless have been held dependent upon state law, may be mentioned Lang v. Commissioner, 304 U.S. 264, 267, 58 S.Ct. 880, 82 L.Ed. 1331, 118 A.L.R. 319; Blair v. Commissioner, 300 U.S. 5, 10, 57 S.Ct. 330, 81 L.Ed. 465; Freuler v. Helvering, 291 U.S. 35, 45, 54 S.Ct. 308, 78 L.Ed. 634.

We note the language of Lyeth v. Hoey, supra, concerning the desire for uniformity throughout the states in the administration of federal taxation. We do not consider this case overrules Lang v. Commissioner, supra, and that the Washington law on community property is to be disregarded to the end that there shall be no difference in federal estate taxation between community property and common law states. Likewise, here, one state may by operation of law make such a transfer between corporate trustees, as is here sought to be taxed, and another state may not. Uniformity for all the states is no more possible than is it for the estate tax.

No question is raised between these litigants that, because the trustee from which the law makes the transfer is a federal, as distinguished from a state bank and trust company, the character of the transfer is not determined by the state law for the sale of the whole of the trust business. The appellant presents no issue of law in this regard save that for the purposes of this tax statute, title to stocks held in trust by a bank,

whether state or national, is not transferred by operation of the California corporate law.

C. The transfer of the stock between the two corporate trustees was from a named resigned trustee to a named substituted trustee appointed within the terms of the trust agreement and hence not subject to the tax under Regulations 71, Article 35 (h).

Article 35 (h) reads:

"(h) The transfer of shares or certificates of stock from the name of a deceased or resigned trustee to the name of a substituted trustee appointed in accordance with the terms of the trust agreement, which is a transfer resulting wholly by operation of law."

■ When the trustors created the several trusts in the trust holding corporation as trustee, by necessary implication they incorporated into the trust instrument the provisions of the California Bank Act. Estate of Barnett, 97 Cal.App. 138, 143, 275 P. 453; Mercantile Trust Co. v. San Joaquin Agric. Corp., 89 Cal.App. 558, 575, 265 P. 583; Estate of Barreiro, 125 Cal.App. 153, 172, 173, 13 P.2d 1017.

There was therefore incorporated into the trust instruments the following provision of the California corporate law relative to the transfer of the shares of stock held in trusts so created:

" * * * Any bank may sell the whole of its business or the whole of the business of any of its departments or the whole of the business of any of its branches to any other bank * * *. The selling and purchasing banks must for such purposes enter into an agreement of sale and purchase, which agreement shall contain all the terms and conditions connected with such sale and purchase. Such agreement shall contain proper provision for the payment of liabilities of the selling bank or of the department sold and the assumption by the purchasing bank of all fiduciary and trust obligations of the selling bank or department sold, and in these particulars shall be subject to the approval of the superintendent of banks; *and shall not be valid until such approval is obtained.* * * *

" * * * Upon the approval by the superintendent of banks of an agreement of sale and purchase and the transfer of the business of a trust department or of a bank having a trust department the purchasing bank shall, ipso facto *and by operation of law and without further transfer, substitution, act or deed,* and in all courts and places, *be deemed and held to have succeeded* and shall become subrogated and shall succeed to all *rights,* obligations, *properties,* assets, *investments,* deposits, demands, contracts, agreements, *court and private trusts* and other relations to any person, creditor, depositor, *trustor, principal or beneficiary of any court or private trust,* obligations and liabilities of every nature, and *shall execute and perform all such court and private trusts* in the same manner as though it had itself originally assumed the relation or trust or incurred the obligation or liability." (Italics supplied.) Section 31, California Bank Act; Deering's General Laws, 1927, Act 652, Section 31.

■ The Supreme Court has repeatedly held that it is the underlying essence of a transaction which determines its taxability. Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 493, 57 S.Ct. 569, 81 L.Ed. 755; Bowers v. Lawyers' Mtge. Co., 285 U.S. 182, 188, 52 S.Ct. 350, 76 L.Ed. 690; United States v. Phellis, 257 U.S. 156, 168, 42 S.Ct. 63, 66 L.Ed. 180; Commissioner of Int. Rev. v. Schumacher Wall Bd. Corp., 9 Cir., 93 F.2d 79, 81.

■ The question then is whether or not the essence of this transfer under this California statute is the resignation of the trust obligation by one of the trustees and the assumption of the same trust obligation by a substituted trustee, appointed in accordance with the terms of the trust agreement.

Obviously, this is the plain common sense of what transpired when, in accordance with the California statute, which is a part of the trust agreements, the business of the one corporate trustee was sold in solido to the other corporate trustee.[2] By that transaction the taxpayer effected a successful resignation from its trust obligation in accordance with the provision of Article 35 (h) and there was appointed a substitute trustee who took over the trust. Cf. Mercantile Trust Co. v. San Joaquin Agric. Corp., 89 Cal.App. 558, 573–575, 265 P. 583; Estate of Barreiro, 125 Cal.App. 153, 167, 13 P.2d 1017. Since the California Bank Act providing for this is a part of the trust agreements under which the shares of stock are held, the transfer transaction, including the appointment of the substituted trustee, was

---

[2] Bogert, The Law of Trusts and Trustees, 1935, Vol. 3, § 511, at page 1641, and § 512 at page 1643.

"in accordance with the terms of the trust agreement" as required by Article 35 (h).

The new trustee is named in the transaction as is the old trustee named, and the practical and only effect of the transaction is to transfer the trustee obligations and rights from one named trustee to another named trustee.

To the contention that section (h) of Article 35 applies only to the certificates of stock which may be transferred from the name of one trustee to the name of another, it is an obvious answer that the act also refers to the transfer of shares themselves, as distinguished from their certificates.

■ , Appellant suggests that the transfer of title of stocks necessarily implies the endorsement and surrender of a certificate or the entry of the change of ownership on the books, and bases the suggestion on a dictum in Raybestos-Manhattan Co. v. U. S., 296 U.S. 60, 62, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111. This dictum has no relevance to a statutory transfer by operation of law where, the instant before the law makes the transfer, the title to the stocks is in one trustee and the instant after it is in another. Here it is stipulated that this is the transfer sought to be taxed.

Since a trustee bank cannot be certain that title to stock held in trust will be transferred until the superintendent of banks has given his consent, and since it passes ipso facto this consent, it is not conceivable that the California legislature contemplated that the trustee bank is to make provision for the transfer at that moment of the thousands of shares of stock held in its trusts, by their transfer on the books of other corporations scattered throughout the states of the country [3] or, where evidenced by certificates, by their endorsement and delivery to the substituted trustee.

It is a reductio ad absurdum of the appellant's claim that such entries and deliveries of endorsed certificates are essential to the transfer of title contemplated by the taxing act, that, since this was not shown to have been done, there was no transfer of title and hence no tax due.

Here is a true resignation by sale of taxpayer's trust business to another trust corporation, different from the absorption of one trust holding corporation by consolida-

tion into another under another provision, section 31a, of the same act. There "each of the consolidated banking corporations, as a distinct, independent, and separate corporate entity, practically passes out of existence or becomes extinct upon the completion of the act of consolidation", and it could properly be there held that there was no such specific resignation as provided in the trust instrument construed in that case, where the trustee resigned by notice to the beneficiary. Mercantile Trust Co. v. San Joaquin Agric. Corp., 89 Cal.App. 558, 568, 571, 265 P. 583, 588.

Differently under Section 31 of the act, under which a bank may sell merely the existing *business* of its trust department and may continue its existence and build up another such business. The continuing selling corporation does no more than resign from all future functions and obligations of its then existing trusts and they devolve upon a substituted trustee.

We can find no other construction for this regulation, than that a transfer of a trust estate in corporate stocks is not taxable where there is merely a substitution of a newly named trustee, appointed in accordance with the terms of the trust agreement, for one formerly named, but resigned, without any other change in the character of the trust. We cannot believe that the regulation means there is no tax where the name of the trustee is changed on a certificate or on the books of the company, and that there is such a tax where one named trustee is substituted for another without the necessity of such a transfer by certificate or upon the issuing corporation's records. The transfer of legal title to the shares from the taxpayer corporation is wholly by operation of law within Regulations 71, Article 35 (h).

■ D. The transfer is not taxable because it is wholly by operation of law as in a transfer on the death of a testator effected by the law of the state when, through a will he had executed, the legal title to his shares is transferred to his executor.

Article 35 (q) of Treasury Regulations 71, here to be construed, exempts transfers by operation of law, "without any voluntary act of the parties, such as transfer of stock from decedent to executor".

Obviously, in a certain sense, when the testator makes his will designating the ex-

---

[3] The stipulation precludes the contention that the title to some of the shares may not have passed because not satisfying the transfer provisions of other states.

ecutor to whom the shares of stock will be transferred, when on his death the law of the state transfers them, it is a voluntary act of the party. Since under the regulations such a voluntary act does not defeat the non-taxability of the transfer of the stock, acts "such as" the testator's, will not defeat non-taxability.

It is clear that the transfer of stock provided by Section 31 of the California Bank Act is "such as transfer of stock from decedent to executor". As the testator's will names the executor who becomes the transferee of the legal title to the stock, the agreement of sale names the substituted trustee, the purchasing bank, which becomes the transferee of legal title to the stock. Like the transfer from the testator "wholly by operation of law" upon his death, so wholly by operation of Section 31 of the Bank Act, the transferee bank, upon approval of the agreement by the superintendent of banks, "ipso facto and by operation of law and without further transfer, substitution, act or deed, and in all courts and places, * * * [is] deemed and held to have succeeded and shall become subrogated and shall succeed to" the shares.

That such statutory transfer is by operation of law has been squarely held by the California courts. Estate of Barnett, 97 Cal.App. 138, 140, 143, 275 P. 453; Mercantile Trust Co. v. San Joaquin Agric. Corp., 89 Cal.App. 558, 574, 575, 265 P. 583. Cf. Estate of Barreiro, 125 Cal.App. 153, 167, 13 P.2d 1017; Bayer v. Barrett, 127 Cal.App. 305, 312, 15 P.2d 801.

The courts of New York construing its transfer tax act, with provisions similar to those of the federal stamp act, arrive at a similar conclusion of the non-taxability of transfers by operation of law for consolidating companies. Electric Bond & Share Company v. State, 1937, 249 App.Div. 371, 293 N.Y.S. 175, affirmed 274 N.Y. 625, 10 N.E.2d 583; Rockefeller Foundation v. State, Ct. Claims, 144 Misc. 460, 258 N.Y. S. 812; Phelps-Stokes Estates v. Nixon, 222 N.Y. 93, 118 N.E. 241.

We are conscious of a former principle in construing exemptions in a taxing act of transactions otherwise taxable, as here, where the shares are transferred by operation of law, that ambiguities must be construed against the taxpayer. J. W. Perry Co. v. Norfolk, 220 U.S. 472, 488, 31 S.Ct. 465, 55 L.Ed. 548; St. Louis v. United Rys. Co., 210 U.S. 266, 273, 28 S.Ct. 630, 52 L.Ed. 1054. We take it that this has been overruled and that the court is now to exercise the function of "resolving doubts" in construing all tax legislation.

"We are not impressed by the argument that, as the question here decided is doubtful, all doubts should be resolved in favor of the taxpayer. It is the function and duty of courts to resolve doubts. We know of no reason why that function should be abdicated in a tax case more than in any other where the rights of suitors turn on the construction of a statute and it is our duty to decide what that construction fairly should be. Here doubts which may arise upon a cursory examination of §§ 101 and 115 [26 U.S.C.A. §§ 101, 115] disappear when they are read, as they must be, with every other material part of the statute, Hellmich v. Hellman, supra [276 U.S. 233], page 237, 48 S.Ct. [244] page 245, [72 L. Ed. 544, 56 A.L.R. 379], and in the light of their legislative history. Moreover, every deduction from gross income is allowed as a matter of legislative grace, and 'only as there is clear provision therefor can any particular deduction be allowed. * * * A taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms.' New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348."

White v. U. S., 59 S.Ct. 179, 184, 83 L. Ed. ——.

The taxpayer has here pointed out the "applicable" regulations made, in effect, a "statute" by the reenactment of the law they sought by regulation to clarify. The taxpayer has shown it comes within the regulations' terms. Doubts which may have arisen by a cursory examination of the sections of the regulations, disappear when they are read, as they must be, with every material part of the provisions for the exemption, which, since they provide for transactions by operation of law, here include the California Bank Act.

The judgment is affirmed.