### NIAGARA HUDSON POWER CORPORATION v. HOEY, Collector of Internal Revenue.

District Court, S. D. New York.

July 11, 1940.

Le Boeuf, Machold & Lamb, of New York City (Horace R. Lamb, of New York City, of counsel), for plaintiff.

John T. Cahill, U. S. Atty., of New York City (Samuel Brodsky, Asst. U. S. Atty., of New York City, of counsel), for defendant.

COXE, District Judge..

This is a suit for a refund of a stock transfer stamp tax of $260,969.04 alleged to have been illegally collected from the plaintiff. The tax was paid to the defendant on October 21, 1938, and claim for refund was thereafter rejected. The facts have been stipulated, and both sides have moved for summary judgment.

The plaintiff was formed on February 1, 1937 by the consolidation under Section 86 of the New York Stock Corporation Law, Consol.Laws, c. 59, of two New York corporations, Niagara Hudson Power Corporation (hereafter referred to as "Niagara Company") and Mohawk Hudson Power Corporation (hereafter referred to as "Mohawk Company"). In the consolidation, the plaintiff took the name of Niagara Hudson Power Corporation, which was the name theretofore used by the Niagara Company.

At the time of the consolidation, the Niagara Company owned a large amount of stock in the Mohawk Company; it also owned considerable stock in other corporations. Similarly, the Mohawk Company owned stock both in the Niagara Company and in other corporations. Under New York law, title to these stocks on consolidation became vested in the plaintiff.

The commissioner ruled that there had been taxable transfers with respect to the stocks held by the two constituent corporations *in other corporations*. He accordingly assessed a stock transfer stamp tax of $260,969.04 against the plaintiff under Section 800, Schedule A-3, of Title VIII of the Revenue Act of 1926, c. 27, 44 Stat. 9, 99, 101, as amended by Section 723(a) of the Revenue Act of 1932, c. 209, 47 Stat. 169, 272, 26 U.S.C.A.Int.Rev.Acts, page 290.

■ Section 800, Schedule A-3, imposed a stamp tax "on all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to any * * * shares or certificates * * *". The language of this section has been construed broadly to include "every transaction whereby the right to be or become a shareholder of a corporation or to receive any certificate of any interest in its property is surrendered by one and vested in another". Raybestos-Manhattan Co. v. United States, 296 U.S. 60, 62, 56 S.Ct. 63, 64, 80 L.Ed. 44, 102 A.L.R. 111.

Treasury Regulations 71 (1932 Edition) contains various examples of transactions both subject and not subject to the tax. Article 35(r), which is one of the examples of transactions not subject to the tax, reads as follows: "Transfers of shares or certificates of stock which result wholly by operation of law are not subject to the tax. Transfers of this character are those which the law itself will effect without any voluntary act of the parties, such as transfer of stock from decedent to executor".

The plaintiff insists that the transfers now in question were effected "wholly by operation of law", and "without any voluntary act of the parties", and that they are, therefore, not subject to tax.

Section 86 of the New York Stock Corporation Law, in effect February 1, 1937 (see N. Y. Laws 1931, ch. 55), provided that any two or more New York stock corporations, organized to carry on certain kinds of business, might be consolidated into a single corporation by filing with the Secretary of State a certificate of consolidation prepared along specifically prescribed lines. This section further provided that the certificate might be executed by all of the stockholders of the different constituent corporations, or, in the alternative, by two designated officers of the respective constituent corporations, who were required to annex an affidavit stating that they had been authorized to execute and file the certificate by the votes of two-thirds of the outstanding shares entitled to vote, and that such votes were cast at a stockholders' meeting held upon notice. Section 89 of the same law, also in effect February 1, 1937, provided that, upon filing the certificate, all of the property and franchises of the various constituent corporations "shall be taken and deemed to be transferred to and vested in such new corporation, without further act or deed".

In the present consolidation, the Niagara and Mohawk companies followed the alternative procedure of having the execution and filing of the certificate authorized by the stockholders of the respective constituent corporations at stockholders' meetings held upon notice. With respect to each corporation, the directors first considered and approved the plan of consolidation, as appearing in the proposed certificate, and then directed by resolution that a special stockholders' meeting be called for authority to proceed. Such a special stockholders' meeting was thereafter held for each corporation, at which the necessary authority from the stockholders was obtained. The execution of the certificate by the respective officers of both corporations followed immediately, and the certificate was thereupon filed.

■ I do not think that the present transfers were in any real sense effected "wholly by operation of law" as required by Article 35(r) of Treasury Regulations 71; they resulted essentially from the voluntary action of the constituent corporations after the necessary authority had been obtained from their respective stockholders. The mere fact that on filing the certificate the property of the constituent corporations automatically vested in the consolidated corporation was not enough to strip the transaction of its voluntary character or to make the transfers wholly by operation of law. The case is similar to that of Koppers Coal & Transportation Co. v. United States, 3 Cir., 107 F.2d 706, where it was held that a transfer of stock resulting from a merger of corporations under Delaware law was not wholly by operation of law. It is true that there is a distinction between merger and consolidation (15 Fletcher, Cyclopedia Corporations § 7041) but this distinction is of no significance insofar as the present question is concerned, for the Delaware statute contained a provision for the automatic vesting of title in the merged cor-

poration similar to that of Section 89 of the New York Stock Corporation Law.

■ The cases principally relied on by the plaintiff are Electric Bond & Share Co. v. State of New York, 249 App.Div. 371, 293 N.Y.S. 175, affirmed without opinion 274 N.Y. 625, 10 N.E.2d 583, and Rockefeller Foundation v. State of New York, 144 Misc. 460, 258 N.Y.S. 812, both holding that on a consolidation under the New York Statute, the transfer of stocks by a constituent corporation to a consolidated corporation is not subject to the transfer tax imposed by Section 270 of the New York Tax Law, Consol.Laws, c. 60. The stated ground for these decisions was that the transfers were "by operation of law", and, therefore, not taxable. The decisions are not, however, controlling in the construction of the federal stock transfer statute. This is for the federal courts to determine, and the Supreme Court has already given the statute a broad interpretation. Raybestos-Manhattan Co. v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111; Founders General Corp. v. Hoey, 300 U.S. 268, 57 S.Ct. 457, 81 L.Ed. 639. "The state law creates legal interests, but the federal statute determines when and how they shall be taxed". Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199. See also Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410. In the present case, I think the transfers were clearly within the language of the statute as applied by Treasury Regulations 71.

The motion of the defendant for summary judgment in his favor is, therefore, granted; and the similar motion of the plaintiff denied.