## WEIL et al. v. UNITED STATES.

### No. 27.

Circuit Court of Appeals, Second Circuit.

Dec. 16, 1940.

Sherman S. Rogers, of New York City (Sherman S. Rogers and Herbert Burton Brill, both of New York City, of counsel), for. petitioners.

Hughes, Richards, Hubbard & Ewing and John Fletcher Caskey, all of New York City (Curtiss Ely Frank, of New York City, of counsel), for Mortgage Corporation of New York, amicus curiæ.

John T. Cahill, U. S. Atty., of New York City (Maxwell S. McKnight, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before L. HAND, AUGUSTUS N. HAND and CHASE, Circuit Judges.

## AUGUSTUS N. HAND, Circuit Judge.

The question involved in this appeal is whether a transfer to the petitioners as trustees by the Mortgage Commission of the State of New York of certain bonds and mortgages guaranteed by the New York Title and Mortgage Company were subject to a federal tax under Schedule A (9), Title VIII of the Revenue Act of 1926 as amended by Section 724 (a) of the Act of 1932, 26 U.S.C.A. Int.Rev.Acts, p. 297.

The amendment provides for a tax upon: "9. Bonds, etc., sales or transfers: On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of le-, gal title to any of the instruments mentioned or described in subdivision 1 * * * whether made by any assignment in blank or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale * * *."

"Subdivision 1", so far as it affects the question before us, relates to "bonds * * * issued by any corporation".

The Collector of Internal Revenue demanded payment of a documentary stamp tax amounting to $6,361.64 on the transfer of the corporate bonds and mortgages which was paid·under protest by the above-named trustees who brought the present suit to recover the same. The District Court granted a summary judgment for recovery, on the ground that there was no taxable transfer, from which the United States has appealed. We think that the broadly inclusive language of the statute and the rulings of the Supreme Court in analogous cases rendered the transfer taxable and require the reversal of the judgment.

The situation which resulted in the transfer which we have to consider was caused by the financial depression and the great collapse of real estate values in 1933. Owing to this depression the Legislature enacted the so-called Schackno Act, N.Y. Laws, Chapter 745, Unconsol.Laws N.Y. § 1796 et seq., and under Section 3 of that Act the Superintendent of Insurance was empowered to: "take over, administer, * * * and manage * * * any or all of the functions of any guaranty corporation with respect to any mortgage investment sold or guaranteed by such guaranty corporation, whenever in his opinion such action is necessary or advisable for the protection of such guaranty corporation or of the holders of such mortgage investment, in the event (1) that such guaranty company has been taken over by the superintendent for rehabilitation or liquidation, or (2) that there is a default under such mortgage investment, or under any bond, mortgage or other security against which such mortgage investment has been issued."

By virtue of the foregoing powers and the provisions of Article XI of the Insurance Law, Consol.Laws N.Y. c. 28, the Superintendent of Insurance took over legal title to the bonds and mortgages held by the

guaranty companies, among which were the investments involved in this suit against which Series C–2 certificates guaranteed by the New York Title & Mortgage Company had been issued.

In order to provide a more ample facility for the administration and reorganization of bonds and mortgages which had been guaranteed by corporations organized under the insurance law the Mortgage Commission was created under Chapter 19 of the Laws of 1935, Unconsol.Laws N.Y. § 1751 et seq. It was to assume the burden of administering and reorganizing guaranteed mortgage properties in the place of the Superintendent of Insurance and was intended to be an agency that would be in many cases intermediate between the administration of the Superintendent and trustees to be selected by the court. Section 6 of that Act required the Commission to take over from the Superintendent of Insurance "possession and control of, and legal title to, all of the bonds, * * * and mortgages in respect whereof outstanding mortgage investments have been issued or guaranteed by such guaranty corporations * * *". Pursuant to that section, the Mortgage Commission took over from the Superintendent of Insurance the bonds and mortgages underlying the certificates in Series C–2 of the New York Title & Mortgage Company.

Section 18 of the Mortgage Commission Act provided that the Act was not "to prevent the promulgation and approval of a proposal or plan pursuant to the provisions of sections six * * *" of the Schackno Act. It also provided that: "Whenever a proposal or plan of reorganization shall have been approved by the court and shall have become operative pursuant to the provisions" of the Schackno Act "which proposal or plan shall vest either title, possession or control over any property of which the commission shall be in possession, in any other person, firm or corporation, the commission shall terminate its functions in respect of such property and surrender the same as provided in said proposal or plan."

Section 18 also provided that, whenever the Commission shall promulgate a plan pursuant to section six of the Schackno Act, it shall specify in such plan that the same is promulgated pursuant to the Schackno Act, that the provisions of that Act shall apply to all further proceedings in respect of such plan and that the provisions of section seven of the Mortgage Commission Act shall be inapplicable thereto.

In spite of the broadly inclusive language of Section 724 (a) of the Revenue Act of 1932, already quoted, transfers resulting wholly by operation of law and not through the voluntary act of the parties have been held free from a tax by courts which have had occasion to interpret both this and similar statutes, and the Department of Internal Revenue has thus construed Section 724 (a) in its Regulations. United States v. Merchants Nat. Trust & Savings Bank, 9 Cir., 101 F.2d 399; Terminals & Transportation Corp. v. State, 169 Misc. 703, 8 N.Y. S.2d 282, affirmed, 257 App.Div. 1028, 14 N. Y.S.2d 493; Electric Bond & Share Co. v. State, 249 App.Div. 371, 293 N.Y.S. 175, affirmed, 274 N.Y. 625, 10 N.E.2d 583.

Regulations 71, Article 120, provides that: " * * * articles 34 to 39, both inclusive, of these regulations, relating to sales or transfers of stock, are controlling also in respect of sales or transfers of bonds, in so far as consistent with the provisions of Schedule A-9 and in so far as not inapplicable to the matter of sales or transfers of bonds."

Regulations 71, Article 35, provides: "Sales or transfers not subject to tax—The following are examples of transactions not subject to the tax:

* * * * * *

"(h) The transfer of stock from the name of a deceased or resigned trustee to the name of a substituted trustee appointed in accordance with the terms of the original trust agreement, which is a transfer resulting wholly by operation of law.

* * * * * *

"(r) Transfers of shares or certificates of stock which result wholly by operation of law are not subject to the tax. Transfers of this character are those which the law itself will effect without any voluntary act of the parties, such as transfer of stock from decedent to executor."

In view of the foregoing regulations the transfer of the securities by the guaranty corporation to the Superintendent of Insurance pursuant to Section 3 of the Schackno Act and the subsequent transfer by the Superintendent of Insurance to the Mortgage Commission were admittedly transfers which took effect "wholly by operation of law" and accordingly were not subject to any tax under Section 724 (a) of the Act of 1932.

The transfer in question was different. It was carried out by virtue of a plan proposed by the Mortgage Commission which provided for the appointment of trustees to take over the guaranteed mortgages, who were to be selected by the certificate-holders themselves. Section 6 of the Schackno Act, provides that: "No such plan or agreement shall become operative unless and until it shall have been approved, in its original or in a modified form by such court, and unless and until the holders of two-thirds in principal amount of such mortgage investments * * * or their agent duly authorized, shall have consented to such plan or agreement."

Thus the approval of the court was wholly conditioned upon the consent of the proper proportion of the certificate-holders. We think that a transfer in pursuance of an order dependent on such a consent cannot be regarded as "wholly by operation of law." The certificate-holders had the option either to require liquidation of their securities by the Mortgage Commission or to reject the plan proposed and obtain, if possible, the approval of some other plan which they might think more advantageous. It is true that both before and after the order approving the plan was made they had substantially the same equitable interest in the mortgages and that they would have it under any other plan which would have received the sanction of the court, but the consent of two-thirds was necessary in order that the transfer should be carried out and this requirement made the transaction differ substantially from one where there was a mere substitution of trustees after the first trustee had died or become incapacitated and his successor was chosen solely through an order of the court or in accordance with the terms of the original trust agreement. Here there was not only a change in the trustees but the plan approved also imposed duties upon them which varied from those of the Superintendent of Insurance or the Mortgage Commission.

The Supreme Court construed the statute imposing the transfer tax literally in Raybestos-Manhattan, Inc., v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111, and Founders General Corp. v. Hoey, 300 U.S. 268, 57 S.Ct. 457, 81 L.Ed. 639, and was altogether strict in subjecting the transfers to a tax. Accordingly in Koppers Coal & Transportation Co. v. United States, 107 F.2d 706, 708, the Court of Appeals for the Third Circuit imposed a tax upon the transfer to C. C. B. Smokeless Coal Company of stocks in five different corporations belonging to Koppers Coal & Coke Company which became merged under the laws of Delaware in C. C. B. Smokeless Coal Company. The court said that: "upon the consolidation or merger the right of Koppers Coal & Coke Corporation to be a shareholder of the five designated corporations ceased. Its interest in the stock was surrendered by voluntary act and the right and interest in the stocks vested in the C. C. B. Smokeless Coal Company * * *". The name of the latter corporation was thereafter changed to Koppers Coal & Transportation Company. The court imposed the tax because "the transfer * * * was not 'wholly by operation of law' since the voluntary act and participation of the constituent companies was required in order to effect the merger or consolidation."

Whatever may be said of the decision of the Court of Appeals of the Ninth Circuit in United States v. Merchants Nat. Trust & Savings Bank, 101 F.2d 399, as to the particular transfer before it, the record in the case at bar precludes the contention that the transfer here was "wholly by operation of law" since the order under which it was made required prior consents by the certificate-holders.

The New York decisions in Terminals & Transportation Corp. v. State, 169 Misc. 703, 8 N.Y.S.2d 282, affirmed, 257 App. Div. 1028, 14 N.Y.S.2d 493, and Electric Bond & Share Co. v. State, 249 App.Div. 371, 293 N.Y.S. 175, affirmed, 274 N.Y. 625, 10 N.E.2d 583, that transfers similar to those here were by operation of law, and certain other New York decisions to a like effect, while of persuasive value, cannot determine what is a taxable transfer under the United States statute. Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199. That determination must be made in the light of the departmental regulations and the interpretation of the statute in the federal courts. It is perfectly true that in the case at bar there could be no transfer of title from the Mortgage Commission to the trustees until the court had confirmed the plan and the trustees accepted the trust, yet both events were conditioned upon the consent of two-thirds of the certificate-holders so that the transfer was due in a substantial degree to the voluntary acts of the latter who co-operated in effecting the passage of title. The transfer was not "wholly by operation of law".

For the foregoing reasons the judgment is reversed with directions to dismiss the complaint.