## EMPORIUM CAPWELL CO. v. ANGLIM.

### No. 22165–S.

District Court, N. D. California, S. D.

Jan. 8, 1943.

Sloss & Turner, of San Francisco, Cal., for plaintiff.

Frank J. Hennessy, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., for defendant.

ST. SURE, District Judge.

Plaintiff sues to recover documentary stamp tax in the amount of $16,514.12, paid under protest on June 14, 1941. The tax was assessed by the Collector of Internal Revenue under the provisions of §§ 1800, 1802, Internal Revenue Code, 26 U.S.C.A.; Schedule A–3 of Treasury Regulation 71, on the transfer of stock in connection with the merger of The Emporium Capwell Company (a California corporation), the plaintiff, and The Emporium Capwell Corporation (a Delaware corporation).

The facts are undisputed. The Delaware corporation owned the common stock of the California corporation amounting to 412,853 shares, evidenced by one stock certificate. This stock was carried upon its books at a valuation of $8,511,808.03.

Upon the consummation of a merger agreement dated January 31, 1940, this single certificate was transferred to plaintiff and thereafter new certificates of the California corporation were issued to the stockholders in the Delaware corporation in proportion to their respective holdings in the Delaware corporation. The tax was assessed upon the transfer of the new certificates.

The Delaware and California corporations followed the statutory merger procedure provided in the laws of their respective states. Revised Code of Delaware, 1935, Chap. 65, paragraphs 2091, 2092, §§ 59 and 60. Section 361, California Civil Code. Both laws provide that in order to effect a merger a meeting must be called of all stockholders and approval of at least two-thirds must be obtained. A majority of the board of directors must also approve the merger agreement, and the agreement must be filed with the Secretary of State after proper acknowledgement and approval by the stockholders and directors.

Plaintiff contends that this was a statutory merger resulting wholly by "operation of law", and that the issuance of the stock was therefore exempt from taxation by virtue of Regulation 71, Article 35, sections (e) and (r) of Internal Revenue Regulations, Schedule A, subd. 3, of Title VIII, § 800 et seq., of the Revenue Act of 1926, as amended by Section 723 (a) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev. Acts, page 290. Plaintiff states that the decision in United States v. Merchants National Trust & Savings Bank, 9 Cir., 101 F.2d 399, settles the question.

Defendant claims that the merger was the result of the voluntary acts of the respective corporations, and therefore taxable under Sections 1800, 1802, 26 U.S.C.A., supra, and Treasury Regulation 71, Article 34(r). He cites Raybestos-Manhattan, Inc., v. United States, 296 U.S. 60, 56 S. Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111; Founders General Corporation v. Hoey, 300 U.S. 268, 57 S.Ct. 457, 81 L.Ed. 639; Koppers Coal & Transportation Co. v. United States, 3 Cir., 107 F.2d 706; Weil v. United States, 2 Cir., 115 F.2d 999.

The factual and legal situations in the Merchants Bank case and the case at bar are different. In the Merchants Bank case there was a transfer of stock from one trustee to another under the California Bank Act (Deering's California Codes & General Laws, Consolidated Supplement 1925–27, Act 652, § 31, Banks and Banking, page 877), which provides, in part:

"Any bank may sell the whole of its business or the whole of the business of any of its departments or the whole of the business of any of its branches to any other bank * * *. The selling and purchasing banks must for such purposes enter into an agreement of sale and purchase, which agreement shall contain all the terms and conditions connected with such sale and purchase. Such agreement shall contain proper provision for the payment of liabilities of the selling bank or of the department sold and the assumption by the purchasing bank of all fiduciary and trust obligations of the selling bank or department sold, *and in these particulars shall be subject to the approval of the superintendent of banks; and shall not be valid until such approval is obtained. * * **

"*Upon the approval by the superintendent of banks of an agreement of sale and purchase and the transfer of the business of a trust department or of a bank having a trust department the purchasing bank shall, ipso facto and by operation of law* and without further transfer * * * succeed to all rights, obligations, * * * and shall execute and perform all such court and private trusts in the same manner as though it had itself originally assumed the relation or trust or incurred the obligation or liability." (Italics supplied).

In that case there was a transfer of stock between two corporate trustees. There was not, as here, issuance of stock to stockholders in the extinguished company. The Court held that Regulation 71, Article 35 (h), applied which provides that: "The following are examples of transactions not subject to the tax: (h) The transfer of shares or certificates of stock from the name of a deceased or resigned trustee to the name of a substituted trustee appointed in accordance with the terms of the trust agreement, which is a transfer resulting wholly by operation of law."

The court said:

"When the trustors created the several trusts in the trust holding corporation as trustee, by necessary implication they incorporated into the trust instrument the provisions of the California Bank Act. * * *

"It is clear that the transfer of stock provided by Section 31 of the California Bank Act is 'such as transfer of stock from

decedent to executor'. As the testator's will names the executor who becomes the transferee of the legal title to the stock, the agreement of sale names the substituted trustee, the purchasing bank, which becomes the transferee of legal title to the stock. Like the transfer from the testator 'wholly by operation of law' upon his death, so wholly by operation of Section 31 of the Bank Act, the transferee bank, upon approval of the agreement by the superintendent of banks, 'ipso facto and by operation of law and without further transfer, substitution, act or deed, and in all courts and places, * * * (is) deemed and held to have succeeded and shall become subrogated and shall succeed to' the shares." [101 F.2d 402.]

All of the proceedings for the merger in the Merchants Bank case were under the direct supervision of the Superintendent of Banks. The Bank Act by its terms declares the transfer is "ipso facto" consummated "by operation of law." In the case at bar the transfer was not made by one legal representative to another but to individual stockholders as a result of a voluntary merger. There is no law which provides that such a transfer shall be by operation of law. There was cooperation and participation by the two corporations in the transaction resulting in the transfer of stock. There were meetings of the stockholders of both companies and two-thirds of the stockholders approved the merger, and the board of directors of the companies also approved.

In Raybestos-Manhattan, Inc., v. United States, supra, the Court held that a stamp tax was collectible on the right to receive shares even where that right had been created by operation of law. In Founders General Corp. v. Hoey, supra, the Court held that the right to receive stock was taxable even where the person who was entitled to receive the stock could not compel delivery of it from the nominee to whom the stock had been issued.

In Koppers Coal & Transportation Co. v. United States, supra, there is a factual situation similar to that here, and the

Court, in discussing the question of whether the transfer was wholly by operation of law by virtue of the fact that the corporation followed the provisions of the Delaware Revised Code of 1935, Sections 59 and 60, the same provisions as are in question here, said: "Such a transfer of title is within the express language of Schedule A(3) of Section 800 and is precisely the example given in Article 34(r) of Treasury Regulations 71. The transfer of the stock from Koppers Coal & Transportation Company to C. C. B. Smokeless Coal Company was not 'wholly by operation of law' since the *voluntary act and participation of the constituent companies was required in order to effect the merger or consolidation.*" (Emphasis supplied). [107 F.2d 708.] In Weil v. United States, 2 Cir., 115 F.2d 999, 1002, (certiorari denied 313 U.S. 574, 61 S.Ct. 1086, 85 L.Ed. 1532), the Court examined the Koppers case, and said: "The court imposed the tax because 'the transfer * * * was not "wholly by operation of law" since the voluntary act and participation of the constituent companies was required in order to effect the merger or consolidation.'" With regard to the question of transfer by operation of law, which was before it, the Court in the Weil case said: "It is perfectly true that in the case at bar there could be no transfer of title from the Mortgage Commission to the trustees until the court had confirmed the plan and the trustees accepted the trust, yet both events were conditioned upon the consent of two-thirds of the certificate-holders so that the transfer was due in substantial degree to the voluntary acts of the latter who cooperated in effecting the passage of title. The transfer was not 'wholly by operation of law.'" To the same effect, see Niagara Hudson Power Corporation v. Hoey, D.C., 34 F.Supp. 302, 303, 304, affirmed 2 Cir., 117 F.2d 414, certiorari denied 313 U.S. 571, 61 S.Ct. 958, 85 L.Ed. 1529; Mortgage Guarantee Co. v. Rogan, D.C., 41 F.Supp. 932, 936; Seattle-First National Bank v. United States, D.C., 44 F.Supp. 603, 608.

Judgment that plaintiff take nothing and that defendant have judgment for his costs.